NOBLES, APPELLANT, *v.* THE TOLEDO EDISON CO.,
APPELLEE.

(Decided November 18, 1940.)

*Mr. Eugene Rheinfrank,* for appellant.
*Messrs. Welles, Kelsey, Cobourn & Harrington* and
*Mr. Ray D. Avery,* for appellee.

LLOYD, J. On July 13, 1937, the plaintiff Nobles and the defendant The Toledo Edison Company entered into a written agreement which provided, insofar as is here material, that: Nobles grants and conveys to the Edison company the right and easement "to construct, maintain and operate two (2) parallel lines for the transmission and distribution of electric energy

* * * with all necessary pole structures, poles, wires, cables, guywires, stubs, anchors, fixtures and appliances'' and ''to add to the number and relocate at will pole structures, poles, wires, cables, guywires,'' etc., and to remove obstructions ''which may endanger the safety or interfere with the use of said pole structures, poles, wires,'' etc., and a right of ingress and egress ''for the purpose of constructing or protecting lines, of repairing, renewing, relocating or adding to the number of pole structures, poles,'' etc.; ''provided that The Toledo Edison Company, its successors or assigns shall further pay to me or my heirs or assigns the sum of fifty ($50) dollars for each pole structure erected and to be erected on said premises * * * which payment is to be made at the time the electric lines are surveyed and the pole structure locations fixed. This indenture contains all agreements, express or implied, between the parties.''

The plaintiff claims that in conjunction therewith, it was orally agreed that no guywires were to be used to support any of the pole structures and that to induce him to execute the written agreement, and upon which he relied, defendant falsely represented that the pole structures would not require guywires and that none would be used.

On July 13th, contemporaneously with the written agreement, a writing designated as ''damage agreement'' was also signed by Nobles, in which it was provided that:

''The undersigned, being duly authorized hereby offers to accept fifty ($50) dollars per structure in full payment for right of way and fifty ($50) dollars per structure in full payment for all damages [that may accrue], including timber cut, by reason of the erection and construction of a line for the transmission of electric energy, which is [to be] constructed over and across said property by virtue of an easement dated 7-13-37, and given by Byron O. Nobles to said company.

This said sum of one hundred ($100) dollars per structure to be paid by said company before construction of the line over or across the property of the undersigned.''

A check of the defendant for $400, dated September 18, 1937, was sent to Nobles, who accepted and cashed it. Endorsed thereon was the following:

''Received of The Toledo Edison Company $400 in full payment for right of way, erection of poles, and all damages, that may accrue, including timber cut, by reason of the erection and construction of a line for the transmission of electric energy over and across my property, in accordance with the terms of an easement given the above company, dated July 13, 1937.''

Thereafter the defendant proceeded to construct its first transmission line to support which it erected, in pairs, eight poles, each two of which, about 500 feet apart, were joined together at the top by a crossbar to which the transmission wires are attached. Twelve guywires are attached to these poles to maintain them in place. Under the contract, a second transmission line, similarly constructed, was later to be erected.

The plaintiff claims damages for the alleged false representations as to the non-use of guywires; and also that he should receive an additional $400 for the pole structures to be erected to support the second transmission line in accordance with the contract as he claims it should be construed, that is, that not two poles joined at the top by a cross-arm, but each pole separately, constitutes a pole structure within the meaning of the contract.

In evidence is a diagram showing each two of the poles, as erected and to be erected, joined at the top by a crossbar which diagram a witness of the defendant stated that, before the execution of the agreement, he showed to Nobles. The diagram sketch shows the two-pole construction as it would appear when erected with the crossbars thereon. This is denied by Nobles, who

testified positively that no such diagram or sketch was shown to him and that the company's representative who negotiated the execution of the agreements told him at the time of their execution that "there would be two lines and two poles to the line," and that "there would be eight" poles.

The trial of the action resulted in a verdict for the plaintiff of $650, after which the court granted a motion for judgment notwithstanding the verdict, leaving undisposed of the motion of defendant for a new trial. The action of the court was based on the conclusion that the written contract could not be varied by oral evidence, and the claim as to the false representations as to the use of guywires, if made, was at most a representation of something to be done in the future and not of a present or past transaction and that in any event Nobles, having signed the contract after reading it and it being specifically provided therein that necessary guywires might be used and maintained, he was bound thereby and barred from contending otherwise. The correctness of this conclusion is obvious.

The second contention, that within the meaning of the contract each pole constituted a pole structure, making eight pole structures instead of four, as contended by defendant, is a more serious matter. A single pole erected with a cross-arm at the top upon which wires were to be strung with attendant guywires, might well be construed to be a pole structure, and the mere fact that the word "poles" is found in the contract would not make this a strained construction. The contract having been prepared by the defendant, is to be construed most favorably to the plaintiff, and in the absence, at the time of its execution, of a mutual understanding that "pole structure" as used in the agreement contemplated the use of more than one pole in the to-be-constructed "pole structure," it may well be construed to mean the use of a single pole. If, as

Nobles testified, at the time of its execution the representative of the company advised him that there were to be eight poles, and it was so understood by him, then the contract should be so construed; but otherwise, if, when it was about to be executed, he was shown the diagram or sketch as defendant's witness testified.

Under the evidence as it appears in the record these were questions to be submitted to the jury under appropriate instructions. The judgment of the Court of Common Pleas is therefore reversed and the cause remanded thereto with directions to rule on the pending motion for a new trial and for further proceedings according to law.

*Judgment reversed and cause remanded.*

CARPENTER and OVERMYER, JJ., concur.