OPINION
Appellant James Rogers is appealing the decision of the Richland County Court of Common Pleas that granted summary judgment on behalf of Kalmbach Feeds, Inc. ("Kalmbach") and awarded damages to Kalmbach in the amount of $125,450. The facts giving rise to this appeal are as follows.
On August 10, 1995, Appellant James Rogers entered into three separate contracts, over the phone, with Barb O'Flaherty, an agent of Kalmbach. Pursuant to the agreement, Rogers agreed to sell 155,000 bushels of corn to Kalmbach. According to the first contract, Rogers agreed to sell 100,000 bushels of number 2 yellow corn to Kalmbach at $2.65 a bushel, with delivery to occur at Kalmbach's place of business in either October or November of 1995.
Pursuant to the second contract, Rogers agreed to sell 25,000 bushels of number 2 yellow corn to Kalmbach at $2.73 a bushel with delivery to be at Kalmbach's place of business, in January of 1996. In the third contract, Rogers agreed to sell 30,000 bushels of number 2 yellow corn to Kalmbach at $2.69 a bushel, with delivery to be at Kalmbach's place of business in December of 1995.
At the time Rogers entered into these contracts with Kalmbach, he was an experienced farmer and had been farming since 1970. Rogers received these contracts, in the mail, within a few days of August 10, 1995. There was no language in the purchase confirmation contracts about Kalmbach agreeing, in the future, to purchase calls on behalf of Rogers.[1] Rogers admitted, at his deposition, that at the time the parties entered into the three contracts, he did not want to purchase calls. Depo. James Rogers at 70.
On September 29, 1995, Rogers called Barb O'Flaherty, at Kalmbach, to purchase calls on the 100,000 bushels. Several days later, O'Flaherty informed Rogers that Kalmbach would not buy that many calls without Rogers personally writing a check on behalf of Kalmbach. However, it was Rogers' belief that Kalmbach would purchase the calls and take the purchase price for the calls out of the settlement proceeds.
On January 10, 1995, Rogers advised Kalmbach that he would not deliver the corn pursuant to the contracts. Rogers reaffirmed this statement, on January 11, 1995, in the Wyandot Court of Common Pleas. Rogers did not deliver any of the corn to Kalmbach and subsequently sold it on the open market, to third parties, for a substantially higher price than the contracted price with Kalmbach. As a result of Rogers' breach of the contracts, Kalmbach had to purchase the corn, on the open market, at a higher price than what it could have purchased it from Rogers.
Kalmbach originally brought this action against Rogers, on December 22, 1995, in the Wyandot Court of Common Pleas. In addition to its claim for monetary relief, Kalmbach also sought injunctive relief which would have prohibited Rogers from selling his corn to third parties until resolution of this lawsuit. The trial court denied Kalmbach's request for injunctive relief. Thereafter, Rogers moved for a change of venue to Richland County, which the trial court granted. Kalmbach subsequently moved for summary judgment which the trial court granted on July 30, 1997, and awarded Kalmbach damages in the amount of $125,450.
Rogers timely filed his notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR PLAINTIFF, SINCE GENUINE ISSUES OF MATERIAL FACT REMAINED BEFORE THE COURT.
 II. THE TRIAL COURT ERRED IN ESTABLISHING DAMAGES FOR DEFENDANT AT $125,450.00.
 Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard that we review appellant's assignments of error.
 I
In his first assignment of error, appellant contends the terms of the three contracts he entered into with Kalmbach were ambiguous and therefore, parol evidence should be permitted to explain the contract terms. We disagree.
It is a principle of basic contract law that a contract must be construed most strongly against the party who drafted it.Nobles v. Toledo Edison Co. (1940), 67 Ohio App. 414, 417. In the case of Finomore v. Epstein (1984), 18 Ohio App.3d 88, paragraph one of the syllabus, the court of appeals defined the parol evidence rule and its applicability:
 The parol evidence rule prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements. However, introduction of contemporaneous oral representations is permitted when fraud is alleged.
We explained in the case of Mid-Ohio Ford AMC-Jeep-Renault,Inc. v. The Huntington National Bank (March 21, 1989), Ashland App. No. CA-912, unreported:
 It is clear that an unambiguous contract cannot be explained by parole (sic) evidence. Thus, where the words of any written instrument are free from ambiguity in themselves, and where external circumstances do not create any doubt or difficulty as to the proper application of those words to claimants under the instrument, or as to the subject matter to which the instrument relates, such instrument is always to be construed according to the strict, plain common meaning of the words themselves; * * *. Id. at 4.
Kalmbach drafted the contracts at issue in the case subjudice. Therefore, we must construe the language of the contracts against Kalmbach. However, in doing so, we agree with the trial court's conclusion that the contracts are unambiguous. Appellant Rogers asserts that Kalmbach would not advance the money to him to purchase 100,000 calls and this was his justification for refusing to deliver the 155,000 bushels of corn pursuant to the written contracts.
We find that the evidence indicates otherwise. Appellant Rogers admitted that when he entered into the contracts, he did not want to purchase calls and call options were not made a part of the contract. Depo. James Rogers at 70. Appellant Rogers received the purchase confirmation contracts and acknowledged he was aware there was no written language in the purchase confirmation contracts about Kalmbach being responsible to purchase calls or advance him money to purchase calls at his request and he made no written objections to the purchase confirmation contracts within ten days of receipt of the contracts. Depo. James Rogers at 67-68.
Appellant Rogers also admits that at the time he entered into the contracts with Kalmbach there was no discussion or agreement as to how any future calls would be purchased. Depo. James Rogers at 62. Appellant Rogers further testified that Kalmbach did not refuse to purchase calls on his behalf, Kalmbach merely required him to forward a check to cover the cost of the same. Depo. James Rogers at 68. Finally, Appellant Rogers admits that he assumed Kalmbach would advance the funds to purchase calls in the future and he made that assumption knowing that certain elevators advance the money for the purchase of call options and others do not. Depo. James Rogers at 75-76.
We agree with the trial court's conclusion that the contracts at issue are unambiguous and therefore, pursuant to the parol evidence rule, the contracts must be construed according to the strict, plain meaning of the words used in the contracts. We further find that Appellant Roger's deposition testimony supports this conclusion as he clearly understood that call options were not a part of the contract and that Kalmbach required him to submit a check prior to Kalmbach purchasing the call options. As no genuine issue of material fact exists regarding the issue of call options, the trial court properly granted summary judgment on behalf of Kalmbach.
Appellant's first assignment of error is overruled.
 II
Appellant maintains, in his second assignment of error, that the trial court erred when it established damages, on behalf of Kalmbach, in the amount of $125,450. We disagree.
Specifically, appellant contends that three separate dates were cited by Kalmbach as the dates when it first discovered that appellant would not deliver the corn. However, appellant maintains that of these three possible dates, the trial court selected January 11, 1996, as the date to determine damages. Appellant argues that of the three possible dates, this was the date when corn prices were the highest, $3.48 per bushel. Appellant contends Kalmbach knew as early as November 14, 1995, that he would not be delivering the corn.
R.C. 1302.87(A), of the Uniform Commercial Code, addresses the measure of damages and provides:
 (A) * * * the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time the buyer learned of the breach and the contract price together with any incidental and consequential damages * * * less expenses saved in consequence of the seller's breach.
We believe the trial court properly selected the date of January 11, 1996, as the date to determine damages as that was the day appellant swore, under oath, that he would not be delivering the corn to Kalmbach. Specifically, Paul Kalmbach, President of Kalmbach Feeds, Inc., stated in an affidavit filed in support of the motion for summary judgment that:
 On the evening of January 10, 1996, James Rogers advised me that he was not going to deliver the contracted corn to Kalmbach Feeds, Inc., nor was he willing to pay for damages to Kalmbach Feeds, Inc. as result of his failure to deliver. On January 11, 1996, James Rogers affirmed what he told me on January 10, 1996, under oath in the Common Pleas Court of Wyandot County, Ohio. Kalmbach Affid. at paragraph 6.
Kalmbach had to purchase the corn on the open market to replace the 155,000 bushels appellant failed to deliver. The total market price for the 155,000 bushels was $539,400, an increased cost to Kalmbach in the amount of $125,450. We find the damages awarded to Kalmbach were in accord with R.C. 1302.87(A).
Appellant's second assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
By: Wise, J., Reader, J., concurs.
Hoffman, P. J., concurs in part and dissents in part.
[1] A "call option" is one which gives the option buyer the right, but not the obligation, to purchase the underlying futures contract at the strike price on or before the expiration date. In practice, a call option will provide "insurance" for the farmer in a time of upward price movements.