OPINION AND JUDGMENT ENTRY
This appeal comes to us from a summary judgment issued by the Erie County Court of Common Pleas. It involves a dispute over a real estate lease with an option to purchase. Because we conclude that the trial court properly granted summary judgment in favor of appellees, we affirm.
In May 1993, appellees, Carl and Theodora Gerber ("Gerbers"), purchased commercial real estate from Pete Schlachter. The purchase was contingent upon the execution and assignment to the Gerbers of a lease/option to purchase agreement between Schlachter and Sun Cha Thigpen (the then lessee and operator of a health spa on the property). The terms of the Schlachter/Thigpen agreement were that Thigpen agreed to purchase the property in a deal that ultimately would involve $206,000, — a $10,000 cash payment, with the balance of $196,000 to be
 "financed by seller on lease purchase agreement. Terms beginning June 1, 1993 and for 10 consecutive months, $1,000 per month as additional down payment. Also beginning June 1, 1993 an additional $1,500.00 per month for 60 consecutive months, at which time payment will increase to $1,600.00 per month for an additional 60 months. Late fee will be $75.00."
On June 19, 1993, the Gerbers entered into a new lease and option to purchase with Thigpen. Although similar, the relevant terms of these contracts were worded somewhat differently from the Schlachter/Thigpen agreement. The Gerber/Thigpen purchase option provided, in part, that:
 "For and in consideration of Ten 00/100 ($10.00) and other valuable consideration, receipt of which his hereby acknowledged, CARL L. GERBER and Theodora Gerber hereinafter referred to as Optionor, hereby grants [sic] to SUN CHA THIGPEN, her successors and assigns, hereinafter referred to as Optionee, an exclusive right and option to purchase the following described property * * *.
 "1. This option, except as set forth below in Paragraph 6, is irrevocable for a period from the date of signing herein up to and including noon, 1 June 2003.
 "2. The parties, and each of them acknowledge and agree that they have executed, contemporaneously with the signing of these presents, a certain Lease * * * pertaining to the above described parcel.
 "3. The parties further agree and acknowledge that said Lease shall be and hereby is fully incorporated in these Presents as if the same were fully written herein.
 "4. The purchase price for the above described property is One Hundred Eighty Six thousand 00/100 ($186,000.00) Dollars. The same shall be paid immediately by Optionee upon exercise of the option. There shall be allowed, as a credit against the aforementioned purchase price, all payments made by Optionee to Optionor pursuant to Paragraphs 2.01 A and B of the Lease.
 "5. If Optionee fails to exercise this Option before its expiration, the consideration paid herewith shall be retained by Optionor.
 "6. Paragraph 2 notwithstanding, this Option shall be deemed revoked and expired upon the happening of any of the following events, viz:
"* * *
 "D. Optionee being in default of any terms of the Lease or declaring bankruptcy, whether voluntarily or involuntary, and whether a so-called straight bankruptcy or other proceedings in bankruptcy court, or being placed in receivership;
 "E. Optionee being ousted from the premises pursuant [to] judgment in a forcible entry and detainer action; * * *
"* * *
 "7. * * * Optionee shall not be deemed to have exercised this option unless and until she has made all payments of rent due and payable under Article 2 of the lease prior to the purported exercise of the Option, and all payments of taxes, assessments and insurance pursuant to Articles 3, 4, and 5 of the Lease.* * *."
The Gerber/Thigpen lease provided, in part, that Thigpen would lease the property for a term of ten years, beginning on June 1, 1993 and ending on May 31, 2003. Total rent for the ten years was $186,000, paid in monthly installments of $1,500 for the first five years and increased to $1,600 per month for the second five years. As further consideration, the lease also obligated Thigpen to pay for utilities, taxes, assessments, insurance, and repairs. Although not mentioned in the new contracts with the Gerbers, Thigpen paid the initial $10,000 and three months of the additional monthly $1,000 down payment amounts along with the $1,500 monthly rent payments to the Gerbers.[1]
On October 27, 1993, with the consent of the Gerbers and the receipt of $8,500, Thigpen assigned her interests in the lease/purchase agreements to appellant, Mok Sun Ho ("Ho"). That agreement stated that, in the event that Ho purchased the property, the $8,500 paid to Thigpen would be credited to the purchase price. Ho also agreed to pay all rent due under the lease agreement from and after the date of the assignment. Again, although not specified in any of the documents, Ho also continued paying to the Gerbers the extra $1,000 payments along with the $1,500 monthly rent. In all, Ho paid a total of $8,000 in addition to the monthly rental payments.
Although unclear from the record, sometime in the late spring of 1994, the Hawaiian Health Spa ("Hawaiian"),[2] was shut down pursuant to nuisance actions brought by the county prosecutor and state attorney general. In September 1994, appellees terminated the rental agreement and sought to evict appellant, alleging that she had violated the terms of the lease agreement.[3] By consent of the parties, Ho agreed to vacate the premises and arrangements were made to remove certain personal property from the premises.
In January 1995, the trial court granted a writ of restitution to the Gerbers against appellee, Thigpen, and Hawaiian Health Spa, Inc. The court then scheduled the remaining claims of the parties for trial. The parties disagreed as to alleged unpaid rent and the disposition of the alleged $21,000 down payment (the initial $10,000 and $3,000 paid by Thigpen plus the $8,000 in payments made by Ho.) In September, the parties filed cross motions for summary judgment.
In October 1998, the trial court entered judgment denying both summary judgment motions. However, in December 1998, the parties stipulated that the court could determine the case on summary judgment, based upon the pleadings and depositions filed with the court.
In January 1999, the trial court granted summary judgment to the Gerbers, awarding them $4,725 for unpaid rent and late charges for May 1994, December 1994, and January 1995. The court also awarded the entire $21,000 "down payment" to the Gerbers as "forfeited due to violations" of the addendum to the original Schlachter/ Thigpen purchase agreement, which the court found to be binding on Ho by assignment. The court determined such violations to be non-payment on the lease payments and misuse of the property.
Appellant now appeals that judgment, setting forth the following two assignments of error:
"ASSIGNMENT OF ERROR NO. 1:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE APPELLEES, BECAUSE THE LAW AND FACTS SUPPORTED THE APPELLANT.
"ASSIGNMENT OF ERROR NO. 2:
 "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO THE APPELLANT."
We will address appellant's two assignments of error together. Appellant essentially contends that the trial court's interpretation of the contracts between the parties was incorrect as a matter of law.
The standard of review for summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if
 "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
In construing the agreement between the parties, our goal is to give effect to the intention of the parties as expressed therein. In Harry S. Peterson Co. v. Detzel Constr. (Mar. 13, 1998), Hamilton App. No. C-961125, unreported, the court stated the principles we must apply:
 "In the construction of any written agreement, a court's primary objective is to ascertain and give effect to the intent of the parties, which can be found in the language that they chose to employ. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. The interpretation of a written agreement is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923; Seringetti Constr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1, 4-5, 553 N.E.2d 1371, 1375. It must give effect to the contract's express terms in determining the rights and obligations of the parties and cannot, in effect, create a new contract by finding an intent not expressed in the clear language used by the parties. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501; Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150."
These principles are particularly applicable where the parties have included an integration clause. See Morris Novak Realty Co.v. Gibbons (May 27, 1993), Cuyahoga App. No. 62654, unreported at 4, citing Nobles v. Toledo Edison Co. (1940), 67 Ohio App. 414,417.
In this case, the parties do not dispute the facts but only the trial court's determination that the $21,000 (paid in part by Thigpen and in part by Ho) should have been refunded to Ho. The trial court's determination was based upon language in the original purchase option and lease agreements between Thigpen and Schlachter. However, the lease agreement between Thigpen and the Gerbers, which is incorporated by reference into the purchase option agreement, contains the following language at paragraph 16.05: "This lease constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter." Therefore, regardless of any prior agreements between Thigpen and Schlachter, Ho received by assignment only the interest that Thigpen held in the contracts with the Gerbers. Thus, the trial court was technically incorrect in basing its summary judgment upon the original documents.
Nonetheless, via the assignment of the Thigpen/Gerber documents, Ho received an option to purchase which was contingent upon her compliance with the terms of the lease. It is undisputed that Ho defaulted on several months of lease payments and her business was closed due to alleged illegal activities. Ho had not excerised the option to purchase prior to this default. Therefore, appellees were permitted, under the terms of the agreements, to revoke the option to purchase. The real question then is whether Ho is entitled to any refund from the $21,000.
Paragraph five of the purchase option states that if appellant "fails to exercise this option before its expiration, the consideration paid herewith shall be retained by" appellees. Appellant claims that the consideration referred to is only the $10 specifically indicated in the opening paragraph of the option contract. Appellant's narrow reading of the consideration clause overlooks the "and other variable considerations" language contained in that document. In our view, when considered within the context of a real estate deal involving $206,000, it is illogical and unreasonable to think that if Thigpen defaulted or failed to exercise the option, that the parties contemplated that the Gerbers would retain only a few months of rent and $10 from the deal.
Although not incorporated into the Thigpen/Gerber documents, Thigpen and Ho voluntarily continued to make the extra $1,000 payments as previously agreed, either as consideration for the option or as additional down payment amounts. It was understood by both Thigpen and Ho that should the sale be completed the extra payments would be credited towards the purchase price. However, nothing in any of the documents gives appellant the right to a return of the extra payments made when the option was withdrawn due to alleged illegal activity. Thigpen admitted that she never expected any money to be refunded to her from the Gerbers after the lease was terminated. In addition, the $8,500 paid by Ho to Thigpen would only be credited towards the purchase price should the purchase option actually be exercised. By reference, this supports the interpretation that any down payments were non-refundable. Even if likened to a down payment on a land contract, appellees would not have been required to return the $21,000, but rather could have simply begun forfeiture proceedings. See R.C. 5313.07.
Alternatively, in the absence of specific language as to the "down payments," appellant essentially offers an equitable argument that appellees should be estopped from retaining the $21,000 because it constitutes unjust enrichment, based upon a moral obligation to return the money. See Hummel v. Hummel
(1938), 133 Ohio St. 520. However, it is well settled that one who seeks equity must come into court with clean hands. To be entitled to relief one must have carried out as far as possible his or her own part of the contract. See McPherson v. McPherson
(1950), 153 Ohio St. 82, 91; Marinaro v. Major Indoor SoccerLeague (1991), 81 Ohio App.3d 42, 45. A party generally cannot demonstrate "clean hands" if he or she has "violated conscience or good faith" or is guilty of reprehensible conduct. Id.
In this case, appellant's violation of the lease agreement through default in payments and purported illegal activities caused the termination of the purchase option and lease. Thus, appellant cannot claim "clean hands" or a right to equitable relief.
Upon a complete review of the lease/purchase agreement and assignment documents, we conclude that the only reasonable interpretation is that the extra payments made by Thigpen and Ho (whether designated as "down payments" to be later credited toward the sale or consideration for the option to purchase) were non-refundable. Although the trial court arrived at its determinations for the wrong reasons, it did not err in determining that appellees were entitled to retain the $21,000 down payments. Therefore, the trial court properly granted summary judgment in favor of appellees.
Accordingly, appellant's two assignments of error are not well-taken.
The judgment of the Erie County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J., James R. Sherck, J.,Richard W. Knepper, J., concur.
[1] The Gerbers testified that they only received $6,000 of the initial down payment. The real estate company involved in the sale which also provided the new lease and option to purchase agreement retained $4,000 as a "finders fee."
[2] Although unclear from the record, Hawaiian Health Spa, Inc. was apparently the name of appellant Ho's business entity.
[3] Thigpen and Hawaiian Health Spa, Inc. were also made party defendants in the suit. Nevertheless, Hawaiian and Thigpen are not parties to this appeal.