OPINION
Defendants-appellants, Eastfork Trace, Inc. and Kelly Flannery, appeal the decision of the Clermont County court of Common Pleas granting summary judgment to plaintiff-appellee, Winton Savings Loan Co. ("Winton"), in a foreclosure action. We affirm the trial court's decision.
Appellants subdivided and marketed the sale of 117.256 acres of real estate known as Eastfork Trace. In order to finance the development appellants borrowed $2.1 million from Winton. Winton held two open-end mortgages on the development property, which were secured by two balloon notes that matured on November 1, 2000.
In order to continue receiving building permits for the individual lots in the subdivision, appellants were required to construct a pump station to increase the water pressure within the development. Appellants also began a fly ash project to raise the grade of low-lying areas within the development. Winton refused to disburse funds for the pump station and fly ash projects. Winton argues the pump station and fly ash projects were not within the definition of "Improvements" under the development loan agreement. Furthermore, Winton argues none of the loan documents contain any language authorizing a line of credit or discretionary right to draw funds. Appellants maintain that funds were available for the pump station and fly ash projects because the open-end mortgage established a line of credit that provided a discretionary right for the borrower to draw money.
After November 1, 2000, appellants made no additional payments of interest or principal on the notes and mortgages. Appellants claim no additional payments of interest or principal were made as a result of Winton's breach of the agreement to provide the funding necessary to complete the development. Winton filed a foreclosure complaint against appellants on February 13, 2001. On July 2, 2001, the trial court granted Winton's motion for summary judgment. Appellants appeal the decision raising a single assignment of error:
 THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS TO WINTON'S COMPLAINT AND [APPELLANTS'] SECOND COUNTERCLAIM WHEN THE EVIDENCE BEFORE THE TRIAL COURT WOULD CAUSE THE TRIERS OF FACT WITH REASONABLE MINDS TO COME TO MORE THAN ONE CONCLUSION REGARDING SUCH FACTS.
An appellate court reviews a decision granting summary judgment on a de novo basis. See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. Pursuant to Civ.R. 56(A) and (B), either party to a lawsuit can make a motion for summary judgment. Summary judgment is properly granted when: 1) there is no genuine issue as to any material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64,66.
Appellants assert the parties were treating the loan in question as a line of credit. Appellants argue a written document can be modified orally and then subsequently confirmed by documentary evidence. Appellants contend that written requests for projections and a status report constitute documentary evidence of an agreement to fund the pump station and fly ash projects. Furthermore, appellants argue that applications for payments on November 30, 1999 and October 19, 1999 were paid by Winton, exhibiting that Winton agreed to fund the pumping station and fly ash projects. Therefore, appellants argue the trial court should have allowed the introduction of parol evidence regarding the line of credit.
Winton argues any prior oral understanding cannot modify the loan documents, even if such understanding is reduced to writing, because the loan documents contain an integration clause, which conclusively establishes the finality and completeness of their written agreement. Loan agreements must conform to the statute of frauds under R.C. 1335.02. R.C. 1335.02(C) states, "the rights and obligations of the parties to the loan agreement, shall be determined solely from the written loan agreement * * *." Furthermore, Winton argues that pursuant to the nonwaiver provision in their loan agreement, Winton had the right to be more generous in its management without waiving its rights to later require strict enforcement of the terms of the loan.
A written contract must be construed and interpreted from its four corners without consideration of parol evidence, i.e. evidence that would contradict or vary the terms of the contract. Walter v. First Nat'l.Bank (1982), 69 Ohio St.2d 677, 681, syllabus; Rhodes v. Rhodes Indus.,Inc. (1991), 71 Ohio App.3d 797, 804; Ameritrust Co. v. Murray (1984),20 Ohio App.3d 333, 335. The parol evidence rule bars the use of extrinsic evidence to contradict the terms of a written contract intended to be the final and complete expression of the contracting parties' agreement. South Union, Ltd. v. George Parker Associates (1985),29 Ohio App.3d 197, 207. This is particularly true where the parties have included an "integration clause." Nobles v. Toledo Edison Co. (1940), 67 Ohio App. 414, 417. An integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement. Id. The contract must be construed most strongly against the party who drew it.Central Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 413; Frank v.Railway Exp. Agency (1953), 159 Ohio St. 343, 346.
Section 7.8 of the development loan agreement between appellants and Winton states, "this Agreement and the Loan Documents contain all of the terms covering the disbursement of the Loan by the Lender and the use of the Loan by the borrower." Under Ohio law, this integration language conclusively establishes the finality and completeness of the written agreement. See Galmish v. Cicchini, 90 Ohio St.3d 22, 27, 2000-Ohio-7. The amendment to the Development Loan Agreement "reaffirms all of the covenants and requirements contained in the Development Loan Agreement." Article III and IV of the development loan agreement set forth the requirements and procedures for disbursement. There is no language in the contract creating a discretional line of credit. Therefore, the trial court did not err in prohibiting parol evidence indicating that the loan was a line of credit.
Appellants argue there was no evidence to support the trial court's conclusion "that there remained no funds available for disbursement in light of the undisputed fact that over $200,000 was available under the $2.1 million in notes." Winton argues appellants received the full $2.1 million that Winton agreed to loan to appellants.
R.C. 1335.02(C) states, "the rights and obligations of the parties to the loan agreement, shall be determined solely from the written loan agreement * * *." The development loan agreement states, "Lender agrees to loan to Borrower and Borrower agrees to borrow from lender the amount of $1,200,000." The amendment to the Development Loan Agreement increased the total loan to $2.1 million. The affidavit of Nancy VanBeck, Winton's loan manager, states that all but $1,901.43 of the $2.1 million was disbursed to appellants by November 24, 1998. The full $2.1 million was disbursed to appellants by January 15, 1999. Therefore, under the agreement, the full $2.1 million was disbursed to appellants. Since the loan was not a line of credit, there consequently remained no funds available for disbursement.
Appellants argue that by definition "an open-ended mortgage extends funds up to its limit, and as payments are received on the principal reducing its balance, then funds are once again available to the borrower." Winton contends the open-ended limitation in the mortgages have "nothing to do with the obligation to disburse funds." Winton argues the disbursement of funds is controlled by the development loan agreement and the mortgages only secure the notes.
R.C. 5301.232 governs open-end mortgages. R.C. 5301.232(A) states, "a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record." R.C. 5301.232 does not state that the borrower has a discretionary right to draw money. Furthermore, the open-end mortgage between appellant and Winton states, "the note, this mortgage, financing statements, a separate Assignment of Rents and Leases, a Development Loan Agreement and any additional loan instruments are collectively referred to herein as the Loan Documents." The open-end mortgage states that it is given to secure "payment of all sums advanced by Mortgagee under any of the Loan Documents." Section 7.8 of the development loan agreement states, "this Agreement and the Loan Documents contain all of the terms covering the disbursement of the Loan by the Lender and the use of the Loan by the borrower." Therefore, the open-ended mortgage extends funds only when the requests for funds are in compliance with the development loan agreement. Since the development loan agreement does not form a line of credit, the open-ended mortgage is not a line of credit.
Appellants argue that the trial court's determination that the note between the parties was not a line of credit is contrary to the evidence. Appellants argue that the balance under the $2.1 million in notes vacillated between a high of $309,798.20 to a low of $21,000. Appellants argue Winton extended well over $2.1 million and this can only be justified if the agreement formed a line of credit.
Winton asserts the nonwaiver provision in section 7.4 of the loan agreement allows Winton to gratuitously extend funds over $2.1 million without waiving its right to later require strict enforcement of the terms of the loan.
Furthermore, Winton argues the notes clearly referenced the development loan agreement and the loan agreement does not form a line of credit. The development loan agreement, in section 4.1 states, "the Lender agrees to make disbursements under the Note, subject to the limitations of Section 4.4." Section 4.4 states that "the Loan shall be at all times in balance." Additionally, section 4.4 states that if the loan is out of balance "based on the Lender's estimate," the borrower must deposit the deficiency as security for the loan "before any further disbursement of the Loan shall be made." Winton argues funding the pump station and fly ash project would place the loan out of balance.
The notes state appellants promise to pay Winton together with interest, "so much of the Principal Amount * * * as may be advanced underthe Development Loan Agreement." (Emphasis added.) Clearly the development loan agreement governs the disbursement of funds. Since the development loan agreement does not form a line of credit, the notes between the parties cannot be construed as a line of credit. Furthermore, the nonwaiver provision allows Winton to extend funds over $2.1 million without waiving its rights, which would account for the vacillation in the balance. Therefore, the trial court's finding that the notes between the parties are not a line of credit is not contrary to the evidence.
Appellants argue Winton's "obligation to perform its duties of good faith in administering the loan to Eastfork" is a question for the trier of fact "in light of the allegations in Eastfork's affidavits and attached exhibits." Winton argues no amount of good faith could ever interpret the loan documents in such a way as to create a line of credit.
The interpretation of a contract that is clear and unambiguous is a question of law. State ex rel. Parsons v. Fleming, 68 Ohio St.3d 509,511, 1994-Ohio-172; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. Since the interpretation of a contract involves a question of law, it is decided by the court and not by the trier of fact. See Meeker v. Bituminous Cas.Corp., Inc. (Feb. 5, 1999), Hamilton App. No. C 970977, at 3, reconsideration denied, 86 Ohio St.3d 1493.
Under the terms of the open-end mortgages, the notes, and the development loan agreement, a line of credit was not formed. Since the amount disbursed under the loan agreement exceeded the $2.1 million Winton promised to loan, the loan was administered within the bounds of the development loan agreement. Therefore, Winton did not breach its duty to act in good faith.
In sum, the loan agreement did not create a line of credit, the full $2.1 million was loaned to appellants as promised, the open-ended mortgages did not create a line of credit, and the notes between the parties did not create a line of credit. Since the loan was not a line of credit, Winton's administration of the loan was within its rights under the development loan agreement. Therefore, granting summary judgment was appropriate because reasonable minds can come to but one conclusion, and that conclusion is adverse to appellants. There are no genuine issues as to any material facts; appellants and Winton had a loan agreement for $2.1 million, the agreement did not form a line of credit, Winton disbursed the entire $2.1 million loan amount as promised, and appellants defaulted on the loan. Therefore, Winton is entitled to judgment as a matter of law. The assignment of error is overruled.
Judgment affirmed.
POWELL and VALEN, JJ., concur.