MARINARO, Appellee,

v.

MAJOR INDOOR SOCCER LEAGUE, Appellant.

[Cite as *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42.]

Court of Appeals of Ohio,
Summit County.

No. 14877.

Decided June 19, 1991.

*A.E. Shama,* for appellee.

*Orville L. Reed III,* for appellant.

---

*Per Curiam.*

Appellant, Canadian Soccer Association ("CSA"), appeals from the trial court's order enjoining the Major Indoor Soccer League ("MISL") (n.k.a. "Major Soccer League") ("MSL"), Summit Soccer Association, the United States Soccer Federation and the CSA from enforcing a one year suspension against appellee, Hector Marinaro, a player for the Cleveland Crunch.

The circumstances leading to Marinaro's suspension began in 1986 when he, as a member of the Canadian National Soccer Team, participated in a tournament in Singapore. While in Singapore, Marinaro and other members of the team were approached and paid approximately $15,000 each, with the alleged understanding that they would be expected to throw games.

In 1987, the CSA, a national organization governing soccer in Canada, became aware of the alleged bribes and began to take action to discipline the players. After attempts to criminally prosecute the players and to form a special investigatory committee failed, the board of directors of the CSA held a hearing into the allegations. The players stipulated to the aforementioned operative facts concerning the payments in Singapore but denied having the intent to throw games. The players were suspended for one year.

CSA subsequently communicated the suspension to the Federation Internationale de Football Association ("FIFA"), the international body governing soccer, to which it is a member. The regulations of the FIFA require that national associations recognize each other's suspensions. The FIFA then notified the United States Soccer Federation, a member of the organization, which in turn notified the MSL that Marinaro would not be able to play for a period of one year. Summit Soccer Association (d.b.a. Cleveland Crunch) was subsequently notified and informed Marinaro of the suspension.

Marinaro, in response to the suspension, sought and received injunctive relief in the Summit County Court of Common Pleas, preventing the suspension from going into effect.

## ASSIGNMENTS OF ERROR

"I. The trial court erred to the prejudice of the appellant, Canadian Soccer Association, by enjoining the enforcement of an order prohibiting the plaintiff-appellee from engaging in soccer for a period of one (1) year.

"II. The trial court erred to the prejudice of the appellant by determining that an injunction should be issued because the Major Indoor Soccer League Players Association, not a party to this action, had not received notice of the order suspending appellee, Marinaro."

As these assignments of error are interrelated, they will be addressed together.

■ A review of the journal entry granting the injunction reveals that the primary basis for granting the injunction was the MSL's failure to comply with the provisions of the collective bargaining agreement between the MSL and the Major Indoor Soccer League Player's Association ("MISLPA"). A review of the collective bargaining agreement, however, reveals that the provisions of the agreement do not cover such unique situations as the one at bar.

The primary provisions concerning player discipline in the collective bargaining agreement are found in Article II. Section 1 of this Article provides:

"Section 1. *Authority:* The parties agree that the Commissioner of MISL shall have the authority to impose discipline with regard to:

"(a) Conduct by players on the playing field or in the stadium facilities before, during or after any League-approved game (including pre-season and post-season games).

"(b) Conduct on or off the playing field in which a player is involved in an attempt to fix or throw a game or give or receive a bribe, or to gamble on the outcome of a game, or who fails to report to a League or Club official any attempt to bribe or fix a game.

"Discipline for game misconduct shall not exceed a fine of $1,000."

Remaining sections in Article II provide players with notice of hearings and hearings where league discipline is involved. Article III of the collective bargaining agreement sets forth a grievance procedure for disputes, providing in part:

"Section 1. *Definition:* Any dispute between a player and/or the Union and a Club, or between a player and/or the Union and the League (hereinafter referred to as a 'grievance') involving the interpretation or application of, or compliance with, provisions of this agreement, the MISL By–Laws or the MISL Regulations, in so far as they relate to wages, hours and working

conditions or the MISL Standard Player Agreement, will be resolved exclusively according to the procedure set forth in this Article."

It is clear from the aforementioned sections of the collective bargaining agreement, as well as the general tone of the entire collective bargaining agreement, that the discipline procedure provided under the agreement deals solely with incidents arising from MSL games. The agreement does not cover Marinaro's situation, and, accordingly, does not provide him with protection from the suspension. As such, it was error for the trial court to issue a injunction based upon the provisions of the collective bargaining agreement.

■ Furthermore, Marinaro's actions, as stipulated to in the proceedings that took place in Canada, and as established at the hearing for the injunction, make such equitable relief improper in the case at bar. The "clean hands doctrine" of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy. *Bean v. Bean* (1983), 14 Ohio App.3d 358, 363–364, 14 OBR 462, 467–468, 471 N.E.2d 785, 791–793. The maxim, "he who comes into equity must come with clean hands," requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of his suit. *Kinner v. Lake Shore & Michigan S. Ry. Co.* (1904), 69 Ohio St. 339, 69 N.E. 614, paragraph one of the syllabus; *Goldberger v. Bexley Properties* (1983), 5 Ohio St.3d 82, 85, 5 OBR 135, 138, 448 N.E.2d 1380, 1383; *Hempy v. Green* (May 31, 1990), Franklin App. No. 89 AP–1369, unreported, 1990 WL 72607. In the case *sub judice*, Marinaro engaged in reprehensible conduct that was directly related to the subject matter of this suit: his alleged acceptance of bribes and the subsequent suspension.

Accordingly, the injunction should not have been issued. The judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., BAIRD and CACIOPPO, JJ., concur.