JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Maureen Lewis ("Lewis") appeals the decision of the Parma Municipal Court that entered judgment against her and in favor of appellee Parmatown Spinal Rehabilitation Center, Inc. ("Parmatown"). For the reasons adduced below, we affirm.
 {¶ 2} The following facts give rise to this appeal. Lewis was involved in a motor vehicle accident on March 9, 2001. The tortfeasor was insured by Frankenmuth Financial Group ("Frankenmuth").
 {¶ 3} As a result of injuries sustained in the accident, Lewis received treatment at Parmatown. During her first visit to Parmatown, Lewis presented her Medical Mutual insurance card.Lewis received treatment from March 26, 2001 until June 6, 2001. At some point in the latter part of May, Lewis asked Parmatown not to bill Medical Mutual. Lewis did not want Parmatown to bill Medical Mutual because she was concerned that her settlement with Frankenmuth would be reduced because of the provider discounts provided by Medical Mutual.
 {¶ 4} Nevertheless, Parmatown submitted all claims for the services provided to Lewis to Medical Mutual. While Parmatown experienced some computer problems during this time, hard copies of the claims were also sent to Medical Mutual.
 {¶ 5} Medical Mutual paid the usual, customary and reasonable charge ("UCR") for the services rendered during Lewis's first two visits, resulting in a payment of $60.90. Parmatown subtracted the Medical Mutual payment from the total bill as a partial payment.
 {¶ 6} On or about May 17, 2001, Lewis called Medical Mutual and asked them if they could deny payment to Parmatown. Parmatown received no further payments from Medical Mutual for the services rendered to Lewis. Parmatown indicated it was informed by Medical Mutual that the remaining claims were not paid because Lewis had instructed Medical Mutual not to pay. The parties stipulated that the UCR value for the services rendered would have been about $600.Parmatown brought this action against Lewis and her husband to recover the balance owing on Lewis's account in the amount of $2,973.10. The trial court found Lewis was responsible for any chiropractic services after ten visits since her insurance coverage provided for a maximum of ten chiropractic treatments. The trial court further found that although there was some evidence that a medical necessity form had been submitted for further treatment, Parmatown was relieved from submitting the form based upon Lewis's specific instruction not to continue further processing through her insurance carrier. The trial court determined Lewis was obligated for services rendered on and after April 27, 2001, in the amount of $1,539.
 {¶ 7} With respect to the first ten visits, the trial court found that Medical Mutual had paid for the first two visits and that Lewis was not responsible for any additional balance for those claims. As to the remaining eight claims for services rendered from April 2, 2001 through April 25, 2001, the trial court found Lewis had waived any protection under R.C. 1751.01 et seq. by instructing Parmatown not to process her claims. The trial court rejected Lewis's defense of unclean hands and found in favor of Parmatown on the theory of account/statutory liability and/or unjust enrichment in the amount of $1,009. The total judgment entered against Lewis was in the amount of $2,548.
 {¶ 8} Lewis has appealed the trial court's decision raising three assignments of error for our review. Her first assignment of error states:
 {¶ 9} "The trial court erred when it failed to rule that the appellee had unclean hands."
 {¶ 10} In a bench trial, trial judges are presumed to rely only upon relevant, material, and competent evidence in arriving at their judgments. State v. Richey (1992), 64 Ohio St.3d 353, 362; State v. Post
(1987), 32 Ohio St.3d 380, 384. A judgment will not be reversed as being against the manifest weight of the evidence where some competent, credible evidence exists to support the judgment. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 11} In this case, Parmatown filed a complaint raising claims of account/statutory liability and unjust enrichment. In these claims, Parmatown alleged Lewis failed to pay for medical services provided to her by Parmatown. The trial court ruled in favor of Parmatown on these claims and rejected Lewis's defense of unclean hands. The court found: "Although the Defense raise the issue of equity and unclean hands in this matter, primarily as a defense to the Plaintiff's theory of unjust enrichment, the Court finds that it is Defendant Maureen Lewis who has unclean hands in this case." Lewis argues that this finding was an error.
 {¶ 12} We have previously recognized that a party who is seeking the equitable remedy of unjust enrichment must come to the court with clean hands. Directory Servs. Group v. Staff Builders Int'l (July 12, 2001), Cuyahoga App. No. 78611. It is also a fundamental rule of equity that he who seeks equity must do equity. Id. As explained in Trott v.Trott (Mar. 14, 2002), Franklin App. No. 01AP-852:
"The clean hands doctrine of equity requires that whenever a partytakes the initiative to set in motion the judicial machinery to obtainsome remedy but has violated good faith by his or her prior-relatedconduct, the court will deny the remedy. Marinaro v. Major Indoor SoccerLeague (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450. Thus, in order forthe doctrine to bar a party's claims, the party must be found to be atfault in relation to the other party and in relation to the transactionupon which the claims are based."
 {¶ 13} Moreover, "the maxim, `He who seeks equity must come with clean hands,' requires only that the party must not be guilty of reprehensible conduct with respect to the subject matter of his suit."Basil v. Vincello (1990), 50 Ohio St.3d 185, 190.
 {¶ 14} Lewis supports her defense of unclean hands by referring to certain conduct of Parmatown including the following: (1) Parmatown required Lewis to assume responsibility for all charges despite having presented her insurance card; (2) Parmatown had Lewis fill out a med pay lien and assignment of insurance benefits form without informing Lewis which benefits she was assigning away; (3) Parmatown failed to seek approval from Medical Mutual for the continued treatment of Lewis; (4) Parmatown sought payment from Lewis after she settled her claims with the tortfeasor even though Medical Mutual had begun to pay for the claims; and (5) Parmatown attempted to bill Lewis for payments already received from Medical Mutual.
 {¶ 15} Contrary to Lewis's position in this case, the evidence does not support a finding that Parmatown created the situation that resulted in nonpayment for the services rendered to Lewis. The evidence shows that Parmatown did submit all claims to Medical Mutual, despite Lewis's request that Parmatown stop submitting the claims. The evidence also shows that Lewis asked Medical Mutual not to pay the claims. While Parmatown may have failed to seek approval for continued treatment of Lewis based on Lewis's requests, we do not find that Parmatown acted in bad faith. Further, although Parmatown failed to fully credit Lewis for the two claims that were paid, we do not find Parmatown's actions amounted to reprehensible conduct.
 {¶ 16} Lewis also includes in this assignment of error a challenge to the unjust enrichment claim. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate that (1) a benefit was conferred upon the recipient, (2) the recipient had knowledge of that benefit, and (3) circumstances render it unjust or inequitable to permit the recipient to retain the benefit without compensating the party who conferred the benefit. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179. If an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply unless there is fraud, bad faith, or illegality. Howland v.Lyons, Cuyahoga App. No. 77870, 2002-Ohio-982.
 {¶ 17} Lewis argues that Parmatown's claim for unjust enrichment was flawed because an express contract existed between Parmatown and Medical Mutual regarding UCR and payment. While this agreement may limit the amount Parmatown would receive from Medical Mutual upon an acceptance of submitted claims, Parmatown would be entitled to seek recovery from Lewis for services provided that were not paid by Medical Mutual. Further, there was evidence in this case showing bad faith on the part of Lewis by interfering with the payment of claims by Medical Mutual to Parmatown.
 {¶ 18} Since there is some competent, credible evidence to support the decision of the trial court, we overrule Lewis's first assignment of error.
 {¶ 19} Lewis's second assignment of error states:
 {¶ 20} "The trial court erred when it determined that appellants waived their rights under both statute and contract by purportedly instructing the appellee, at any point in time, not to bill appellants' insurer."
 {¶ 21} Whether a statutory provision may be waived through a party's conduct is a legal issue to be determined by the court. E. OhioGas Co. v. Kenmore Constr. Co. (Mar. 28, 2001), Summit App. Nos. 19567, 19790; Ward v. Hengle (1997), 124 Ohio App.3d 396, 400. Under Ohio law, a person may waive rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy. E. Ohio Gas Co., supra; Hessv. Akron (1937), 132 Ohio St. 305, 307.
 {¶ 22} In this case, the trial court determined that Parmatown "would not be bound by the terms of a Provider Agreement or the restrictions of O.R.C. 1751.01 et. seq. where the patient has instructed [Parmatown] not to process claims, and in effect has waived any protection she may have had under said statutes."
 {¶ 23} R.C. 1751.60 provides in relevant part:
"(A) Except as provided for in divisions (E) and (F) of this section, every provider of health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments.
"(B) No subscriber or enrollee of a health insuring corporation is liable to any contracting provider or health care facility for the cost of any covered health care service, if the subscriber or enrollee has acted in accordance with the evidence of coverage.
"(C) Except as provided for in divisions (E) and (F) of this section, every contract between a health insuring corporation and provider or health care facility shall contain a provision approved by the superintendent of insurance requiring the provider or health care facility to seek compensation solely from the health insuring corporation and not, under any circumstances, from the subscriber or enrollee, except for approved copayments.
"(D) Nothing in this section shall be construed as preventing a provider or health care facility from billing the enrollee or subscriber of a health insuring corporation for noncovered services."
 {¶ 24} The above statute imposes a mandatory requirement on health care providers to seek compensation solely from the health insuring corporation. R.C. 1751.60(A). The statute clearly states that providers cannot, under any circumstances, seek payment from enrollees or subscribers, except for approved copayments. As such, the very language of the statute indicates that the requirement cannot be waived. However, the evidence in this case reflects that Parmatown complied with this requirement. Indeed, despite Lewis's request that Parmatown not submit her claims to Medical Mutual, Parmatown proceeded to submit them.
 {¶ 25} The statute further permits a provider or health care facility to bill a subscriber for noncovered services and also indicates that a subscriber may be held liable for services where she has failed to act in accordance with the evidence of coverage. R.C. 1751.60(B),(D). In this case, there was testimony establishing that Medical Mutual only paid the first two claims because Lewis had asked Medical Mutual not to pay. Based on this evidence, Parmatown was permitted to seek payment from Lewis for the services rendered, whether viewed as noncovered services or services for which Lewis had failed to act in accordance with the evidence of coverage.
 {¶ 26} The evidence also supports a finding that Lewis waived the protection of the statute and the provider agreement insofar as her liability for the services was concerned. Since the waiver of these protections only affected Lewis's private interests, no contrary principles of public policy are involved. While Lewis claims she did not voluntarily relinquish a known right, the evidence establishes otherwise. There is evidence that Lewis actively interfered with the payment of her claims to Parmatown for her own benefit. Lewis clearly indicated that she did not want the claims paid by Medical Mutual in order to increase the value of her settlement with Frankenmuth. Thus, Lewis should have been aware that her actions would result in nonpayment of her claims by Medical Mutual.
 {¶ 27} We find that the trial court's determination that Lewis was responsible for the full amount of the services rendered, other than the first two visits, was supported by competent, credible evidence.
 {¶ 28} Lewis's second assignment of error is overruled. Her third assignment of error states:
 {¶ 29} "The trial court erred when it determined that appellants were responsible for any chiropractic services after 10 visits."
 {¶ 30} The trial court determined that Lewis's insurance coverage provided for a maximum of ten chiropractic treatments, and therefore Lewis was responsible for any services after ten visits. Lewis argues that the trial court erred in this determination.
 {¶ 31} Lewis claims the provider agreement prohibited Parmatown from billing Lewis for any service deemed to be not medically necessary. Lewis argues that because Parmatown failed to submit medical necessity forms to Medical Mutual, it was not permitted to bill her for the additional services.
 {¶ 32} The trial court found that Parmatown was relieved from its obligation to submit the medical necessity forms based upon Lewis's instruction to Parmatown not to continue further processing through her insurance carrier. Lewis asserts that her purported instruction for Parmatown not to process her claims did not occur until the time of her 15th visit.
 {¶ 33} The testimony in this case reflects that Parmatown did not ask Medical Mutual to extend the ten-visit limit because Lewis had asked Parmatown not to submit her claims. Regardless of whether Lewis's instruction occurred after the tenth visit, the evidence reflects that Lewis waived her rights by asking Parmatown not to bill her claims and instructing Medical Mutual not to pay them. Accordingly, the trial court's determination that Lewis was responsible for these services was supported by competent, credible evidence.
Lewis's third assignment of error is overruled.
Judgment affirmed.
FRANK D. CELEBREZZE, JR., P.J., AND JAMES D. SWEENEY, J.*, CONCUR.
* Sitting by Assignment: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals