JOURNAL ENTRY AND OPINION
{¶ 1} Ronald Kozma appeals from an order of the domestic relations court that granted his former wife's motions to show cause. Kozma was found in contempt for his failure to comply with a prior court order mandating the assignment of a portion of his pension benefits to his former spouse, Carolyn (Kozma) Seitz. Kozma claims error in the award since opposing counsel came before the court with "unclean hands," and asserts that the court imposed unreasonable purge conditions where compliance was impossible. We affirm.
 {¶ 2} In November 1992, Ronald Kozma and Carolyn (Kozma) Seitz (hereafter "Seitz") were granted a dissolution following a thirty-year marriage. Under the parties' separation agreement, Seitz was granted a portion of Kozma's pension upon his retirement. In accord with the separation agreement, a Qualified Domestic Relations Order ("QDRO") was to be executed and filed with the court reflecting the agreed-upon terms. Seitz's attorney sent the original QDRO to Kozma's employer for its review and approval; however, the employer rejected the document and claimed that it was defective. The QDRO was never amended.
 {¶ 3} In 1999, Kozma applied for retirement. He received a letter from his pension Plan Administrator stating that it had never received an acceptable QDRO after his divorce. The administrator advised Kozma that, because of this error, it would be distributing directly to Kozma what was in essence Seitz's assigned portion of $233.30. When Kozma retired in August 1999, he began collecting his pension. He failed to inform his former wife of his retirement and likewise failed to assign a portion of his pension benefits to her. For approximately the next five years, Kozma continued to collect his full pension without notifying his former wife of either his retirement or of the defective QDRO.
 {¶ 4} In February 2003, Seitz learned of Kozma's retirement and immediately notified her attorney that she was not receiving any of his pension benefits as set forth in the separation agreement. In June 2004, Seitz's attorney filed in domestic relations court a show cause motion, seeking attorney fees and court costs for Kozma's failure to comply with the prior court order.
 {¶ 5} In June 2005, a Magistrate's Decision was issued which granted Seitz's motions to show cause and found Kozma in contempt for the failure to assign the required portion of his retirement benefits. The court sentenced Kozma to thirty days in jail, but suspended the sentence on the condition that Kozma purge his contempt. Under the court's purge conditions, the Magistrate ordered Kozma to pay $13,670, plus interest at five percent per annum, plus an additional $233.33 per month thereafter, directly to Seitz. Kozma was also ordered to pay $3,000 toward Seitz's attorney fees. The Magistrate established a payment schedule to begin fifteen days from journalization and to be paid in full no later than June 1, 2006.
 {¶ 6} Kozma filed objections to the Magistrate's Decision, but the trial court overruled these objections and adopted the Magistrate's Decision. Kozma appeals from this order in two assignments of error, which state:
"I. THE TRIAL COURT ERRED WHEN IT AWARDED ATTORNEY FEES TO PLAINTIFF AFTER THE EVIDENCE CLEARLY DEMONSTRATED THAT PLAINTIFF, BY AND THROUGH HER OWN ATTORNEY'S PRIOR ACTIONS, CAME BEFORE THE COURT WITH `UNCLEAN HANDS.'
II. THE TRIAL COURT ERRED WHEN IT SET FORTH PURGE CONDITIONS UPON DEFENDANT WHICH ARE UNREASONABLE AND COMPLIANCE IS IMPOSSIBLE."
 {¶ 7} In his first claim of error, Kozma takes issue with the allegedly defective QDRO that was drafted by Seitz's attorney in 1992. He claims that, despite receiving notice from his employer concerning the QDRO's deficiencies, Seitz's attorney nonetheless failed to revise the QDRO. He asserts that such actions, therefore, constitute "unclean hands" and that, had counsel followed up with the employer and filed an acceptable QDRO, this entire legal proceeding would have been prevented.
 {¶ 8} The doctrine of unclean hands states the following: "[h]e who seeks equity must come with clean hands. Equity is based upon what is perceived as fair under the circumstances of each case and, when both parties are guilty of injustice, a court of equity will leave them as they are." Patterson v. Blanton
(1996), 109 Ohio App.3d 349, 354.
 {¶ 9} R.C. 3105.011 states that a judge in a domestic relations action has "full equitable powers * * * appropriate to the determination of all domestic relations matters." An equitable defense can be raised against a statutory remedy and, therefore, the equitable doctrine of unclean hands can be employed, where appropriate, in a divorce action. Safranek v.Safranek, Cuyahoga App. No. 80413, 2002-Ohio-5066. Equity requires that, whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his or her prior-related conduct, he will be denied the remedy. Marinaro v. Major Indoor Soccer League
(1991), 81 Ohio App.3d 42, 45. To bar a party's claims, that party must be found to be at fault in relation to the other party and in relation to the transaction upon which the claims are based. Trott v. Trott, Franklin App. No. 01 AP-852, 2002-Ohio-1077.
 {¶ 10} With regard to the allegation of unclean hands, the Magistrate's Decision found that, "[t]hough there is some evidence that the Plan relayed its rejection of the QDRO to Ms. Seitz's attorney, counsel testified that she never received that letter. Again in 1996, the Plan apparently sent, to both parties and both decree attorneys, correspondence repeating this information and warning that they were closing the file. Again, counsel for Ms. Seitz never saw this correspondence until the present litigation when she joined the Plan and subpoenaed its records. There was no evidence that Ms. Seitz knew of the problem or received the correspondence." Magistrate's Decision at 2.
 {¶ 11} Despite this finding, the Magistrate nonetheless took into consideration the deficiencies with the QDRO. The Magistrate's Decision, which was subsequently adopted by the trial court, specifically referenced the 1.5 hours that Seitz's attorney spent drafting the QDRO in 1992, and subtracted this amount from the total award of attorney fees. Magistrate's Decision at 4.
 {¶ 12} The Decision, outlining Kozma's own role in bringing forth this action, cited specifically to Kozma's acceptance of the pension payments with his knowledge that they did not belong to him and his failure to advise Seitz of his retirement. Magistrate's Decision at 3. The Decision also found that, "[i]f a formal assignments of benefits failed, he owed her at least notice that he had retired (so that she might have followed up earlier) and direct payment of what was owed. He did not forward the 1999 letter to her until June 2004, after her present motion was filed." Magistrate's Decision at 3.
 {¶ 13} It is therefore clear that not only did the Magistrate and the trial court consider the deficiency of the QDRO and make adjustments for it, but that it also fully considered Kozma's own role in the situation and provided adequate consideration.
 {¶ 14} Kozma's first assignment of error lacks merit.
 {¶ 15} In his second assignment of error, Kozma contends that the court erred in setting unreasonable purge conditions where compliance was impossible.
 {¶ 16} A trial court may employ sanctions to coerce a party who is in contempt into complying with a court order. Peach v.Peach, Cuyahoga App. Nos. 82414 and 82500, 2003-Ohio-5645. Any sanction for civil contempt must allow the party who is in contempt an opportunity to purge the contempt. Id. A trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible. Burchett v.Miller (1997), 123 Ohio App.3d 550. The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy.Marx v. Marx, Cuyahoga App. No. 82021, 2003-Ohio-3536.
 {¶ 17} In the instant case, the purge order is merely a recitation of what Kozma agreed to as part of the dissolution agreement filed in 1992. Kozma never made a good faith effort to comply with the order and, instead, admits receiving money that was not his and making no attempt to forward the notices of deficiency as to the QDRO until June 2004 — almost five years after accepting the over-payments. Tr. at 31-32.
 {¶ 18} Although Kozma asserts that he has no ability to pay the purge order, he has not proven his inability to pay. He also testified that he took out a second mortgage on his house to consolidate his bills, but that he paid off his car loan with money from this second mortgage. Tr. at 37-40. He then testified that he has money available on his credit card, but that he simply does not want to use this. Tr. at 44.
 {¶ 19} With reference to his inability to pay, the Magistrate's Decision found: "The court observes that there are small potential economies in Mr. Kozma's household, including cell phones and cable. More likely, Mr. Kozma will choose to further extend his lines of credit should he need to do so to meet the scheduled ordered below, despite the fact he does not wish to do so." Magistrate's Decision at 3. The Decision went on to find:
"[Kozma] testified that paying Ms. Seitz was one of the reasons he took the present second mortgage, but it is obvious most of the proceeds went for other things. He has a debt-free boat, purchased for $12,000 in 1999. He owns a camper which he purchased in late 2003 to replace one destroyed by a tree. He has a credit card with available credit, but it already carries a $12,000 balance and he doesn't want to increase what he presently pays on it, $279 monthly. * * * Listening to Mr. Kozma's testimony, one is impressed mostly with his apparent sense that this is all unwarranted inconvenience to him and his household — that he shouldn't be expected to retire quickly a debt to his former spouse, despite the fact that her money helped fund his expenses for about six years now."
Magistrate's Decision at 3.
 {¶ 20} Moreover, apparent from the record filed with the court, no affidavits of Kozma's financial situation were submitted. Rather, the only testimony of Kozma's "inability" to pay is his indication that he cannot do so. Kozma's defense that he is unable to pay the amounts he had voluntarily obligated himself to pay in he 1992 separation agreement is suspect without further evidence. This assertion is insufficient. Without solid evidence of his defense of his inability to pay, we find that the purge order was not unreasonable.
 {¶ 21} Kozma's second assignment of error lacks merit.
 {¶ 22} The judgment of the trial court is affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., concurs
 Michael J. Corrigan, J., Concurring in part and Dissenting inPart (See concurring and dissenting opinion attached).
 CONCURRING AND DISSENTING OPINION