DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Deborah Patonai has appealed from the judgment of the Wayne County Court of Common Pleas. This Court affirms.
 I {¶ 2} Appellant owns two lots in the Happy Trails Allotment in Wayne County. At the time Appellant purchased the lots with her now ex-husband, her deed noted that it was subject to restrictions of record. Appellant did not investigate what these restrictions were, despite the fact that they were properly filed with the plat of the development. Appellant has a home on one of the lots and operates an alpaca farm on the other. Appellant and her now ex-husband started the farm with the purchase of three alpacas in 1996. Since that time, Appellant's farm has grown through natural birth cycles, and Appellant now owns more than twenty alpacas and boards several others. Since the inception of the farm, Appellant has expended more than $200,000 to operate the farm.
 {¶ 3} In October of 2004, Appellant received a letter, dated October 15, 2004, informing her that she was in violation of several of the allotment's restrictive covenants. The letter indicated that Appellant was running a business on her lot and harboring more than two animals on the lot, both violations of the restrictive covenants. The letter was signed by "The Happy Trails Homeowner's Action Committee." Appellant did not stop operating her farm and suit was filed against her on January 26, 2005. Appellees, seventeen residents of the allotment, sought an injunction which would prohibit Appellant from continuing to operate her farm.
 {¶ 4} Following discovery, the matter proceeded to a bench trial. At the conclusion of the evidence, the trial court found for Appellees. In so doing, the trial court permanently restrained Appellant from owning more than four alpacas, ordered that she reduce her herd to four within ninety days, and ordered that she maintain her property free from underbrush and unsightly growth.[1] Appellant has timely appealed the trial court's judgment, raising three assignments of error for review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED WHEN IT DENIED [APPELLANT'S] MOTION FOR DIRECTED VERDICT AND DETERMINED THE RESTRICTIVE COVENANTS WERE VALID, DESPITE THE AMBIGUITY OF THE TERM `ANIMALS.'"
 {¶ 5} In her first assignment of error, Appellant has asserted that the trial court erred in enforcing the restrictive covenants. Specifically, Appellant has argued that the term "animals" is ambiguous and prevents enforcement of the covenant. We disagree.
 {¶ 6} The construction of written instruments, including deeds is a matter of law. Karam v. High Hampton Development,Inc., 9th Dist. Nos. 21265 21269, 2003-Ohio-3310, at ¶ 20, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. Questions of law are determined de novo. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313, quoting Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108.
 {¶ 7} The rules of construction applicable to restrictive covenants are well established. Generally, restrictions on the free use of land are disfavored. Driscoll v. Austintown Assoc.
(1975), 42 Ohio St.2d 263, 276-77; Benner v. Hammond (1996),109 Ohio App.3d 822, 827. If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land. Houk v. Ross (1973), 34 Ohio St.2d 77, paragraph two of the syllabus. Where the language in a restriction is clear, a court must enforce the restriction. Deanv. Nugent Canal Yacht Club, Inc. (1990), 66 Ohio App.3d 471,475. Accordingly, when interpreting a restrictive covenant, common, undefined words appearing in the written instrument "will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander,
53 Ohio St.2d at paragraph two of the syllabus.
 {¶ 8} Furthermore, the goal of interpreting the language of a restrictive covenant is to determine the intent of the parties as reflected by the language used in the restriction. Hitz v.Flower (1922), 104 Ohio St. 47, 57. Courts must give words used in a restrictive covenant their common and ordinary meaning.Arnoff v. Chase (1920), 101 Ohio St. 331, 334; Devendorf v.Akbar Petroleum Corp. (1989), 62 Ohio App.3d 842, 845. In addition, courts must read the restrictive covenants as a whole.LuMac Dev. Corp. v. Buck Point Ltd. Partnership (1988),61 Ohio App.3d 558, 563.
 {¶ 9} Appellant has alleged that the following covenant is ambiguous:
"No chicken, fowl or swine shall be maintained in this allotment. No more than two (2) animals shall be harbored or maintained on each lot."
Specifically, Appellant has asserted that the word "animals" is ambiguous. In support of her argument, Appellant relies upon the definition of animal contained in the Federal Animal Welfare Act. We find that Appellant's argument lacks merit.
 {¶ 10} Initially, we note that the Animal Welfare Act has no relevance to the instant action and its definition has no bearing on the matters herein. The mere fact that the term "animals" is capable of being defined in more than one fashion depending upon its context does not permit this Court to abandon our well-established rules of construction. "Animal" is defined as follows:
"[A]ny of a kingdom (Animalia) of living beings typically differing from plants in capacity for spontaneous movement and rapid motor response to stimulation * * * one of the lower animals as distinguished from man[.]" Webster's New Collegiate Dictionary (1980) 45.
Applying this ordinary meaning does not result in manifest absurdity. Accordingly, "animals" must be given its ordinary meeting. Alexander, 53 Ohio St.2d at paragraph two of the syllabus. We, therefore, find no error in the trial court's determination that the above covenant was unambiguous. Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED WHEN IT ENFORCED THE RESTRICTIVE COVENANTS AND REFUSED TO APPLY THE DOCTRINES OF LACHES, WAIVER AND ABANDONMENT."
 {¶ 11} In her second assignment of error, Appellant has argued that the trial court erred in awarding Appellees injunctive relief. Specifically, Appellant has asserted that Appellees' relief is foreclosed by the doctrine of laches. This Court disagrees.
 {¶ 12} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Baughman v. State Farm Mut.Auto. Ins. Co., 160 Ohio App.3d 642, 2005-Ohio-1948, at ¶ 10. To succeed utilizing the doctrine of laches, one must establish: "(1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." Connolly Constr. Co. v. Yoder, 3d Dist. No. 12-04-39, 2005-Ohio-4624, at ¶ 23, citing State ex rel. Cater v.N. Olmsted (1994), 69 Ohio St.3d 315, 325. Accordingly, "[d]elay in asserting a right does not of itself constitute laches."State ex rel. Scioto Cty. Child Support Enforcement Agency v.Gardner (1996), 113 Ohio App.3d 46, 57, quoting Smith v. Smith
(1959), 168 Ohio St. 447, at paragraph three of the syllabus. Instead, the proponent must demonstrate that he or she has been materially prejudiced by the unreasonable and unexplained delay of the person asserting the claim. Connin v. Bailey (1984),15 Ohio St.3d 34, 35-36.
 {¶ 13} Generally, the delay is measured from the point in time at which the complaining party, having actual or constructive knowledge of the violation of the restrictive covenant, reasonably could have instituted suit. Cox v. Garrett
(Aug. 23, 1982), 2d Dist. No. 81-CA-69, at *2.
"In actions to enforce restrictive building covenants reasonably prompt action may be essential to the avoidance of good faith expenditures by an individual seeking to add improvements to his property.
"Prejudice, generally the critical element in the doctrine of laches, may involve, inter alia, a good faith change of position in reliance upon a complainant's inaction, the acquisition of rights by innocent third parties, the loss of essential evidence or testimony, or the expenditure of money or incurring of obligations upon belief of possession of a clear or unencumbered right." (Internal citations omitted; emphasis added.) Id.
We note that the improvements to Appellant's property, such as her expenditures in building the barn, are not at issue herein. Appellees have not asserted that Appellant's improvements to the land are in violation of any of the restrictions and the trial court's order does not require Appellant to remove any of the physical improvements made to her property. Furthermore, as Appellant has alternatives available to her to maintain her investment, such as boarding her animals or selling them outright, this Court finds that the "prompt action" standard discussed in Cox is inapplicable. Additionally, once the proponent of laches has demonstrated an unreasonable delay, the burden then shifts to the complaining party to provide a reasonable excuse for the delay. Id. (noting that such an explanation may include attempts to reach a settlement or assurances by the violating party that violations will be remedied).
 {¶ 14} Whether or not to apply the defense of laches is within the discretion of the trial court and is not overturned absent an abuse of discretion. Still v. Hayman,153 Ohio App.3d 487, 2003-Ohio-4113, at ¶ 8. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd., (1993), 66 Ohio St.3d 619,621.
 {¶ 15} With respect to laches, the trial court found as follows:
"Based upon the evidence presented the Court finds that the instant complaint does not constitute an unreasonable delay or lapse in time asserting a right, or that Ms. Patonai is prejudiced by the enforcement of the deed restrictions. The fact that plaintiffs may have been aware of the alpaca herd as early as 1999 is not dispositive. By defendant's own testimony, her alpaca herd grew over time, and it was not until the herd became extensive that plaintiffs sought relief."
Upon review, we find no reversible error in the trial court's decision.
 {¶ 16} As pertinent herein, Appellees asserted in the trial court that Appellant was in violation of the following two restrictive covenants:
"Each lot shall be used solely and exclusively for single family residence purposes only."
"No chicken, fowl or swine shall be maintained in this allotment. No more than two (2) animals shall be harbored or maintained on each lot."
Appellees asserted that Appellant ran a business out of her lot, an alpaca farm, and far exceeded the two-animal restriction. Appellant has not disputed those facts as true.
 {¶ 17} During trial, Appellant presented her own testimony and cross-examined Appellees Thomas Hunter and William Geiser. Assuming arguendo that Appellant established through this testimony that laches should bar Geiser and Hunter from enforcing the covenants, Appellant's claims on appeal still must fail.
 {¶ 18} As noted above, Appellant pled laches as an affirmative defense. Accordingly, it was Appellant's burden to prove that the defense applied. With respect to the remaining fifteen Appellees, Appellant presented no evidence regarding knowledge of the violation of the covenant, nor did she provide any evidence of the delay in filing the instant action as it relates to those Appellees. In an effort to avoid the result that laches is ineffective with respect to the remaining Appellees, Appellant has asserted that each of them was on constructive notice of the violations. We find no merit in such an assertion.
 {¶ 19} The parties agree that the development discussed herein is rural in nature. Many of the lots contain multiple acres of land. Accordingly, the development is very spacious. In addition, much of the evidence presented below indicates that the alpacas are not noticeable. They make very little noise and the neighbors who testified indicated that the alpacas created little disturbance of any kind in the development. Based upon the record, we cannot say the trial court abused its discretion in finding Appellant had not demonstrated that each of the Appellees should have known that Appellant was running an alpaca farm. Furthermore, Appellant has cited no authority and this Court has found no authority for the proposition that the actual knowledge of her violations possessed by Geiser and Hunter should be imputed to the remaining neighbors. Appellant, therefore, failed to establish that laches applied to the remaining fifteen neighbors. The trial court's refusal to enforce the doctrine, absent Appellant producing evidence of each of its elements with regard to each Appellee, was not an abuse of discretion. Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED WHEN IT ENFORCED THE RESTRICTIVE COVENANTS DESPITE [APPELLEES'] CONDUCT."
 {¶ 20} In her final assignment of error, Appellant has asserted that waiver, abandonment, and the clean hands doctrine prohibit enforcement of the restrictive covenants. Appellant's final assignment of error, however, suffers from the same deficiency as her second assignment of error.
 {¶ 21} The doctrine of "clean hands" is an equitable doctrine. See, generally, Basil v. Vincello (1990),50 Ohio St.3d 185, 190; Brosky v. Brosky (Mar. 28, 2001), 9th Dist. No. 00CA007662, at *3, citing Marinaro v. Major Indoor SoccerLeague (1991), 81 Ohio App.3d 42, 45. This doctrine prescribes that when "a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy." Marinaro, 81 Ohio App.3d at 45. Furthermore, "he who comes into equity must come with clean hands," i.e., the plaintiff must not be guilty of misconduct with respect to the subject matter of the suit. Id.
 {¶ 22} It is undisputed that Appellant established numerous other violations of the other restrictive covenants in the development. From the evidence, it is clear that several of the plaintiffs below were in violation of various covenants. However, Appellant did not establish that the clean hands doctrine bars the claims of each of the plaintiffs. That is, while violations of the covenants may have prohibited the institution of the suit below by a plaintiff who had committed the violation, the remaining plaintiffs would not be barred by such a doctrine, i.e., so long as one of the plaintiffs had clean hands, the suit was properly maintained. The record before this Court does not demonstrate that the clean hands doctrine applies to each of the plaintiffs. Appellant, therefore, failed to meet her burden in demonstrating that the doctrine of clean hands barred the instant suit. Accordingly, the trial court did not err in refusing to enforce the doctrine.
 {¶ 23} Finally, Appellant has asserted that the failure to enforce the restrictive covenants for more than six years constitutes waiver and abandonment. "The burden of proof rests on the defendants to prove a waiver or abandonment of the restriction." Romig v. Modest (1956), 102 Ohio App. 225, 230. As with the above defenses raised by Appellant, Appellant has not demonstrated that the defense applies to each Appellee. There is no indication of the length of any delay that occurred before enforcement of the restriction with respect to any of the Appellees other than Hunter and Geiser. Accordingly, Appellant failed to meet her burden to prove waiver and abandonment.
 {¶ 24} Appellant's third assignment of error lacks merit.
 III {¶ 25} Appellant's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. concur.
[1] While Appellant's brief uses broad language regarding the covenants, the violation for failing to regularly mow the property is not raised in this appeal. Accordingly, this Court does not address that restrictive covenant.