[Cite as *Bridgestone Ams. Tire Operations, L.L.C. v. Harris*, 2018-Ohio-63.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC | JUDGES: Hon. John W. Wise, P. J. Hon. Craig R. Baldwin, J. Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2017 CA 00068 |
| RONNIE HARRIS, ET AL. | O P I N I O N |
| Defendants-Appellants | |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No. 2016 CV 00688


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     January 9, 2018


APPEARANCES:

For Plaintiff-Appellee

DAVID T. MOSS
JOHN R. CHLYSTA
HANNA, CAMPBELL & POWELL
3737 Embassy Parkway,Suite 110
Akron, Ohio 44333

For Defendants-Appellants

TERRENCE L. SEEBERGER
STARK & KNOLL
3475 Ridgewood Road
Akron, Ohio 44333

*Wise, John, P. J.*

{¶1} Defendants-Appellants Ronnie Harris and B&S Transport, Inc. appeal the decision of the Stark County Court of Common Pleas, which granted summary judgment against them and in favor of Plaintiff-Appellee Bridgestone Americas Tire Operations, LLC on several counterclaims in a dispute commenced over payment for automotive tires following termination of a dealership agreement between the parties. The relevant facts leading to this appeal are as follows.

<u>*Parties' Contractual Relationships*</u>

{¶2} Appellant B&S Transport, Inc. is a subchapter "S" corporation primarily owned by Appellant Harris. Appellants developed a tire distribution business using minority "set-aside" and related programs, particularly for supplying tires to the federal government. In 1991, the parties (B & S and appellant's predecessor) entered into a standard dealership agreement, which *inter alia* provided that "[appellants] shall be entitled to purchase the Products at prices in the applicable Bridgestone price lists, less any applicable discounts and allowances and subject to such further terms and conditions as may be in effect from time to time." *See* Agreement para. 6(a). The agreement, by its terms, was to be construed under the laws of the State of California. *Id.* at para. 13.

{¶3} The aforesaid dealership agreement was accompanied by a mutually signed letter dated April 1, 1991 that expressly amended the agreement. The letter included language wherein appellee recognized that because of the nature of appellants' business, "it is not realistic for you to perform certain of the functions performed by a typical tire dealer, such as handling warranty adjustments, or providing services to purchasers of Bridgestone products ***." Appellee also therein stated that it proposed to

proceed with orders being accepted or rejected on a "deal-specific basis," extending to appellants that same "net store prices" and "other prices, discounts and payment terms available to any other Bridgestone dealer ***."

{¶4} The amending letter also stated: "At any time, and for any reason, either party may terminate this relationship upon 30 days' written notice, provided that each party shall *honor all commitments* incurred prior to the effective date of any such termination. *** The intent of this approach is that our business should - and can best - grow over the long term if it is based primarily upon our developing relationship, upon whatever success we have, *and upon mutual good faith."* (Emphases added).

{¶5} Subsequent to 1991, the parties engaged in business under the aforesaid dealership agreement and amending letter, resulting in appellants obtaining numerous federal government contracts benefiting appellee for the provision of Bridgestone and Firestone brand tires.

{¶6} In late 2011, appellants won six contract awards, for two years each, from the Defense Logistics Agency ("DLA"), with DLA having the unilateral right to extend each contract by a year. *See* Ronnie Harris Affidavit, para. 18-24. Appellee was notified that B&S was bidding for the DLA contracts and was timely provided copies of all six contracts. Appellee thereupon began to furnish tires in support of these DLA contracts. Harris Affidavit, para. 23. Appellee specifically advised B&S that it was an authorized dealer to the federal government pursuant to those contracts (referred to by Bridgestone as "their GSA contract"). Harris Affidavit, para. 24. According to Harris, B&S relied upon Bridgestone's support in bidding for this DLA business. Harris Affidavit, para. 20.

{¶7} However, on or about February 28, 2013, appellee caused to be personally delivered to Appellant Harris a written notification that appellee had "decided to terminate B&S Transport as an authorized dealer of all Bridgestone and Firestone brand product lines ***." The stated reasons for termination included "Bridgestone's change in distribution and go-to-market solutions strategies." *See* Exhibit B of Affidavit #1of Landers Gaines. The effective termination date was set forth as January 1, 2014.

<u>*Appellants' Federal Lawsuit*</u>

{¶8} On December 19, 2013, Appellants Ronnie Harris, who is African-American, and B&S Transport sued Appellee Bridgestone Americas Tire Operations in the United States District Court for the Northern District of Ohio, case number 5:13-cv-02793-SL. Appellants therein alleged that Bridgestone had racially discriminated against Harris by terminating the dealer agreement without cause and by allegedly favoring a nonminority dealer. *See B&S Transport v. Bridgestone Americas Tire Opers.,* 171 F.Supp.3d 669, 676 (N.D. Ohio 2016). They also asserted state-law claims, including breach of contract, breach of implied covenant of good faith, promissory estoppel, and others. Appellants sought damages and injunctive relief, arguing that appellee, even after the termination, was obligated to continue selling tires to appellants so that appellants could fulfill their tire contracts with the federal government.

{¶9} After an oral hearing, the federal court denied appellants injunctive relief, finding that the discrimination claim did "not present a high likelihood of success on the merits." *B&S Transport v. Bridgestone Americas Tire Opers.,* 2014 U.S. Dist. LEXIS 26119, 14 (Feb. 27, 2014, N.D. Ohio). Appellee also produced evidence of legitimate

business reasons for the termination, reasons the federal court found "compelling." *Id.* at 19.

{¶10} After discovery, the federal court granted appellee summary judgment on appellants' discrimination claims. 171 F. Supp.3d at 680-83, 689. The federal court further declined jurisdiction over appellants' state-law claims, although we note the court addressed some of the underlying arguments appellants have raised again in the present case.

### *Appellee's Common Pleas Lawsuit / Appellants' Counterclaims*

{¶11} After the federal court declined jurisdiction over the state-law claims, appellee filed an action on March 23, 2016 in the Stark County Court of Common Pleas, seeking to recover more than $1,000,000.00 that Appellants B&S and Harris allegedly owed for tires they had purchased on credit. Appellants, on April 22, 2016, counterclaimed for breach of contract, breach of the implied covenant of good faith, promissory estoppel, tortious interference with contract, antitrust, and a violation of R.C. 1353.06.[1]

{¶12} On February 7, 2017, after the completion of discovery, appellee moved for summary judgment in regard to all claims, including the counterclaims. Via a judgment entry issued on March 28, 2017, the trial court denied summary judgment on appellee's claims, finding a factual dispute over amounts allegedly owed by appellants. However, the court granted summary judgment in favor of appellee on appellants' counterclaims. The trial court issued a *nunc pro tunc* judgment entry on April 14, 2017, adding Civ.R. 54(B) language.

---

[1] Appellants apparently are not pursuing their antitrust, tortious-interference, and R.C. 1353.06 claims in the present appeal.

**{¶13}** On April 25, 2017, appellants filed a notice of appeal. They herein raise the following three Assignments of Error:

**{¶14}** "I.    THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT ON APPELLANTS' BREACH OF CONTRACT CLAIM.

**{¶15}** "II.   THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT ON APPELLANTS' BREACH OF GOOD FAITH AND FAIR DEALING CLAIMS.

**{¶16}** "III.  THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT ON APPELLANTS' PROMISSORY ESTOPPEL CLAIM."

<em><u>Summary Judgment Standard</u></em>

**{¶17}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

{¶18} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

I.

{¶19} In their First Assignment of Error, appellants contend the trial court erred in granting summary judgment in favor of Appellee Bridgestone on appellants' breach of contract counterclaim. We disagree.

{¶20} California recognizes that "the vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Div. of Labor Law Enforcement v. Transpacific Trans. Co.*, 69 Cal.App.3d 268, 275, 137 Cal.Rptr. 855, 859 (Cal.App.1977). Under California statutory law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code §§ 1641. As in Ohio, California courts avoid interpretations of contracts that create

absurd or unreasonable results. *Sequeira v. Lincoln Natl. Life Ins. Co.*, 239 Cal.App.4th 1438, 1445, 192 Cal.Rptr.3d 127, 132 (Cal.App.2015)

**{¶21}** As noted in our recitation of the facts in this matter, the April 1991 "amending letter" states in part: "At any time, and for any reason, either party may terminate this relationship upon 30 days' written notice, provided that each party shall *honor all commitments* incurred prior to the effective date of any such termination." (Emphasis added).

**{¶22}** Appellants first urge that the only proper interpretation of "all commitments," which they note is not accompanied by any modifying language in the letter, is that the phrase includes appellants' anticipated commitments to its third-party customers, not just appellants' and appellee's business commitments to each other. Appellants maintain in this vein that on the effective termination date of December 31, 2013, they were still committed to the remainder of their six supply agreements with the Defense Logistics Agency ("DLA"). Appellants also challenge the trial court's reliance on the language within the letter amendment such as "we [appellee] propose to proceed with orders being accepted or rejected on a 'deal-specific' basis," and "[appellee] reserves the right to refuse or decline any orders at its sole discretion," contending there was no evidence that appellee had rejected any of the six DLA deals. Lastly, appellants question the trial court's reliance upon language in appellee's pricing supplied to B&S on the DLA tire orders, which stated: "(T)his is not a guarantee to supply. This is not a commitment to supply any of these tires." Appellants instead propose that appellee waived its right to "reject" once it began shipping tires for purposes of appellant's DLA contracts.

**{¶23}** We note Count 1 of appellants' counterclaim alleged in part that appellee breached the agreement by terminating it without "good cause," for no "valid performance-based reason," without reasonable notice, and in bad faith. Counterclaim, para. 21. But, as appellee correctly points out in response, the parties' agreement was essentially terminable at will, subject to a thirty-day notice. Appellants do not point to any language requiring additional notice, warning, or "good cause" to terminate the agreement, and we are not persuaded by appellants' restrictive interpretation of appellee's right to reject orders. Ultimately, we find appellants' reading of "all commitments" to include appellants' contracts with third-parties would unreasonably bind the parties and contradict the whole of the parties' agreement, which stated in part that Appellant B&S "is without authority to assume, create or incur any obligation or liability on behalf of Bridgestone." Agreement at para. 10. We thus find reasonable minds could only conclude that no breach of contract occurred.

**{¶24}** Finally, appellants argue that, at minimum, appellee breached the contract by failing to ship two orders for tire model #423-831 placed, for purposes of appellants' contracts with the DLA, on July 31, 2013 and August 27, 2013, prior to the December 31, 2013 termination date. Appellee produced evidence that said model number was affected by production discontinuity in Japan. *See* Landers Gaines affidavit #3. Appellee nonetheless allocated most of these tires to appellants, in addition to extending the overall termination date ten months instead of thirty days. Upon review, we find summary judgment on appellants' breach of contract counter claim on the two final orders in favor of appellee also was not erroneous.

**{¶25}** Accordingly, appellants' First Assignment of Error is overruled.

II.

**{¶26}** In their Second Assignment of Error, appellants contend the trial court erred in granting summary judgment in favor of Appellee Bridgestone on appellants' breach of good faith and fair dealing counterclaims. We disagree.

**{¶27}** In the interest of justice, we will consider whether appellee engaged in business such that it breached either or both (1) the implied covenant of good faith, and (2) an express reference to "good faith" found in the letter portion of the parties' agreement.

*Implied Covenant of Good Faith – Tort Counterclaims*

**{¶28}** Under California law, tort damages may not be awarded for a breach of the covenant of good faith and fair dealing absent some "special relationship" between the parties. *See Martin v. U-Haul Co. of Fresno*, 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17, 26 (Cal.App.1988). The special relationship has been found to exist in California in the "insurance context," employer/employee situations, or bank/depositor relationships. *Martin* at 413 (citations omitted). However, California courts "have consistently declined to expand liability for this tort into other types of contract-based disputes," and "[i]t is of paramount importance that the reason for the contract be 'to secure peace of mind, security, [and] future protection.' " *Id.*, referencing *Wallis v. Superior Court* (1984) 160 Cal.App.3d 1109, 1118, 207 Cal.Rptr. 123. Furthermore, our research indicates California courts, in regard to the present issues, have increasingly "refused to sanction tort remedies outside the context of an insurance policy." *See Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28, 46, 980 P.2d 407, 418, 86 Cal.Rptr.2d 855, 867 (1999), f.n. 9.

**{¶29}** Appellants in the case *sub judice* urge that the utilization of the letter agreement to supplement the standard dealership agreement between the parties is indicative that this was "more than an ordinary commercial relationship" from which a tort claim could be recognized. Appellants' Reply Brief at 11. However, in light of the foregoing California law, we conclude otherwise and hold the trial court did not err in granting summary judgment against appellants on the proposed tort counterclaims.

<u>*Express Covenant of Good Faith – Contract Counterclaims*</u>

**{¶30}** Appellants commence their argument by urging that in California, the law implies a covenant of good faith and fair dealing in every contract. But as noted in our recitation of the facts, *supra*, in this instance the parties' letter agreement included the express language that "[t]he intent of this approach is that our business should - and can best - grow over the long term if it is based primarily upon our developing relationship, upon whatever success we have, *and upon mutual good faith."* (Emphases added). The California Supreme Court has noted that to the extent an *implied* covenant claim seeks simply to invoke terms to which the parties did agree, it is superfluous. *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 352, 8 P.3d 1089, 100 Cal.Rptr.2d 352 (2000).

**{¶31}** Accordingly, in the interest of judicial economy, we will proceed directly to a review of the issue of the express covenant of good faith.

**{¶32}** The gist of appellants' argument at this juncture is that a jury question has been presented as to whether bad faith was demonstrated by: (1) Appellee Bridgestone's termination of the agreement based upon appellee's asserted basis of a "change in distribution and go to market solutions strategy," (2) appellee's decision to terminate while appellants were in the middle of performing their own contracts with the Defense Logistics

Agency (deals that appellee was well aware of), and/or (3) appellee's communication to the federal government that B&S was being "terminated" as an authorized Bridgestone dealer. Appellants additionally urge that a jury could reasonably conclude that, even assuming the termination was occasioned by a change in appellee's distribution strategy, good faith was lacking via a termination without sufficient advance warning or without offering appellants an opportunity to comply with any requested changes.

**{¶33}** "Bad faith" has been defined under California law as " *** generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake ***, but by some interested or sinister motive[,] *** not simply bad judgment or negligence ***." *People v. Superior Court*, 248 Cal.App.4th 434, 447, 204 Cal.Rptr.3d 526, 535 (Cal.App.2016), internal quotations and additional citations omitted. Furthermore, California law recognizes that the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. *See Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 855, fn. 12, 57 Cal.Rptr.3d 363.

**{¶34}** In the case *sub judice*, in addition to the right of either party to terminate, ¶ 9(e) of the parties' dealer agreement states as follows: "The parties have considered the possibility that one or both parties *** may incur expenses and suffer losses as a result of termination, and the parties have nevertheless agreed that neither party shall be liable for any damages by reason of a termination of this Agreement pursuant to its terms." The letter agreement also allowed appellee to decline any orders at its sole discretion and to reject orders on a "deal specific" basis.

**{¶35}** We find appellants' core argument is that appellee's claim that the basis for its decision to terminate its agreement with appellants, *i.e.*, appellee's claimed "change in distribution and go to market solutions strategy" was essentially specious. Appellants maintain this "basis" was largely unknown to the key Bridgestone employees who dealt with appellants and were involved in Bridgestone's government sales efforts. In support, appellants direct us to the depositions of Linda Alberstadt, John Boynton, and Jared Williams. However, upon review, whether this lack of knowledge demonstrates a weak justification for appellee's decision or simply represents lack of full communication regarding marketing plans within appellee's various departments, we conclude reasonable jurors would only find appellee acted within the bounds of the agreement and that no demonstrable lack of good faith had occurred.

**{¶36}** Finally, to the extent appellants argue that, at minimum, appellee demonstrated bad faith by failing to ship two orders for tire model #423-831 placed, for purposes of appellants' contracts with the DLA, on July 31, 2013 and August 27, 2013, prior to the December 31, 2013 termination date, we find summary judgment as to appellants' good faith counter claim on the two final orders in favor of appellee also was not erroneous.

### *Conclusion*

**{¶37}** We conclude the trial court properly granted summary judgment in favor of appellee on all "good faith"-based counterclaims. Accordingly, appellants' Second Assignment of Error is overruled.

III.

**{¶38}** In their Third Assignment of Error, appellants contend the trial court erred in granting summary judgment in favor of Appellee Bridgestone on appellants' promissory estoppel counterclaim. We disagree.

**{¶39}** As an initial matter, we note promissory estoppel is an equitable remedy that only comes into play when the requisites of a contract are not met. *See Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, 37 N.E.3d 799, ¶ 43, citing *Olympic Holding Co., L.L.C. v. ACE Ltd.,* 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 39. Accordingly, we first find reliance on California contract law to be unnecessary for the present assigned error.

**{¶40}** Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations. *GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs.,* Tuscarawas App.No. 2005AP070047, 2006–Ohio–2527, ¶ 11, citing *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim. *In re Estate of Popov,* Lawrence App. No. 02CA26, 2003–Ohio–4556, ¶ 30.

**{¶41}** However, similar to the Ninth District's aforesaid holding in *Padula*, *supra*, we have recognized that promissory estoppel is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract. *See Countywide Petroleum Co. v. El-Ghazal Gasoline Servs., Inc.*, 5th Dist. Stark No. 2011 CA 00120, 2012-Ohio-1009, ¶ 30, citing *Gibson Real Estate Mgt., Ltd. v. Ohio Dept. of Admin. Servs.,* Ohio Ct. Cl. No. 2005–07658, 2006–Ohio–620, ¶ 13, citing *Warren v.*

*Trotwood–Madison City Sch. Dist. Bd. of Educ.*, 2nd Dist. Montgomery No. 17457, 1999 WL 148233. As such, we are unpersuaded by appellants' reliance on *Hershberger v. Altercare, Inc.*, 5th Dist. Stark No. 2006CA00167, 2007-Ohio-1452, which involved an at-will employee situation, rather than a formal contractual relationship. *See id.* at ¶ 51.

**{¶42}** We find no basis at this juncture for abruptly concluding there was no valid contractual arrangement between appellants and appellee. However, even if we were to so conclude, we would have to recognize that if an appellant cannot prove reasonable reliance, he or she cannot establish promissory estoppel. *See Dunn v. Bruzzese*, 7th Dist. Jefferson No. 06 JE 2, 172 Ohio App.3d 320, 2007-Ohio-3500, ¶ 80 (Waite, J., concurring). In the case *sub judice*, we would find any expectation by appellants of tire shipments after 2013 was unreasonable given the overall language of the agreements, the pricing documents language that "[t]his is not a guarantee to supply" and "[t]his is not a commitment to supply any of these tires," and the language of the termination letter stating that Bridgestone would continue to ship tires until December 31, 2013, but that on January 1, 2014, B&S Transport would no longer be a Bridgestone authorized dealer.

**{¶43}** We therefore hold the trial court did not err in granting summary judgment in favor of Appellee Bridgestone on appellants' promissory estoppel counterclaim. Appellants' Third Assignment of Error is overruled.

**{¶44}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.


By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.


JWW/d 1220