[Cite as *Bridgestone Ams. Tire Operations, L.L.C. v. Harris*, 2020-Ohio-76.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. John W. Wise, J. |
|      Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2019CA00098 |
| RONNIE HARRIS, et al. | O P I N I O N |
|      Defendants-Appellants | |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No. 2016CV00688


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     January 13, 2020


APPEARANCES:

For Plaintiff-Appellee     For Defendants-Appellants

DAVID T. MOSS     TERRENCE L. SEEBERGER
JOHN R. CHLYSTA     STARK & KNOLL CO., LPA
HANNA, CAMPBELL, & POWELL, LLP     3475 Ridgewood Road
3737 Embassy Parkway, Suite 110     Akron, Ohio 44333
Akron, Ohio 44333

*Wise, J.*

{¶1}   Defendants-Appellants Ronnie Harris and B&S Transport, Inc. appeal the decision of the Stark County Court of Common Pleas ("trial court"), which granted summary judgment against them and in favor of Plaintiff-Appellee Bridgestone Americas Tire Operations, LLC in a lawsuit seeking payment for automotive tires following termination of a dealership agreement between the parties. The relevant facts leading to this appeal are as follows.

{¶2}   Appellant B&S Transport, Inc. is a subchapter "S" corporation, primarily owned by Appellant Harris, engaged in the business of tire sales and distribution, including the supplying of tires to the federal government. In 1991, B&S Transport Inc. and Bridgestone/Firestone, Inc. entered into a standard dealership agreement, as further discussed *infra*. The agreement, by its terms, was to be construed under the laws of the State of California. *Id.* at para. 13.

{¶3}   The aforesaid dealership agreement was accompanied by a mutually signed letter dated April 1, 1991 that expressly amended the agreement. The letter included language wherein appellee recognized that because of the nature of appellants' business, "it is not realistic for you to perform certain of the functions performed by a typical tire dealer, such as handling warranty adjustments, or providing services to purchasers of Bridgestone products * * *." Appellee also therein stated that it proposed to proceed with orders being accepted or rejected on a "deal-specific basis," extending to appellants that same "net store prices" and "other prices, discounts and payment terms available to any other Bridgestone dealer * * *." The amending letter also stated: "At any time, and for any reason, either party may terminate this relationship upon 30 days' written

notice, provided that each party shall honor all commitments incurred prior to the effective date of any such termination. * * * ."

{¶4} Subsequent to 1991, the parties engaged in business under the aforesaid dealership agreement and amending letter, resulting in appellants obtaining numerous federal government contracts benefiting appellee for the provision of Bridgestone and Firestone brand tires.

{¶5} In late 2011, appellants won six contract awards, for two years each, from the Defense Logistics Agency ("DLA"), with DLA having the unilateral right to extend each contract by a year. *See* Ronnie Harris Affidavit, para. 18–24. Appellee was notified that B&S was bidding for the DLA contracts and was timely provided copies of all six contracts. Appellee thereupon began to furnish tires in support of these DLA contracts.

{¶6} However, on or about February 28, 2013, appellee caused to be personally delivered to Appellant Harris a written notification that appellee had "decided to terminate B&S Transport as an authorized dealer of all Bridgestone and Firestone brand product lines * * *." The stated reasons for termination included "Bridgestone's change in distribution and go-to-market solutions strategies." *See* Exhibit B of Affidavit # 1 of Landers Gaines. The effective termination date was set forth as January 1, 2014.

### Appellants' Federal Lawsuit

{¶7} On December 19, 2013, Appellants Ronnie Harris, who is African–American, and B&S Transport sued Appellee Bridgestone Americas Tire Operations in the United States District Court for the Northern District of Ohio, case number 5:13–cv–02793–SL. Appellants therein alleged that Bridgestone had racially discriminated against Harris by terminating the dealer agreement without cause and by allegedly favoring a

nonminority dealer. *See B&S Transport v. Bridgestone Americas Tire Opers.*, 171 F.Supp.3d 669, 676 (N.D. Ohio 2016). They also asserted state-law claims, including breach of contract, breach of implied covenant of good faith, promissory estoppel, and others. Appellants sought damages and injunctive relief. *Id.*

**{¶8}** After an oral hearing, the federal court denied appellants preliminary injunctive relief, finding that the discrimination claim did not present a high likelihood of success on the merits. *B&S Transport v. Bridgestone Americas Tire Opers.*, N.D.Ohio No. 5:13-CV-2793, 2014 WL 804771 (Feb. 27, 2014).

**{¶9}** After discovery, the federal court granted appellee summary judgment on appellants' discrimination claims. *See* 171 F.Supp.3d at 680–83, 689. The federal court further declined jurisdiction over appellants' state-law claims.

**{¶10}** On reconsideration, the federal court adhered to its original decision. *See B&S Transport, Inc. v. Bridgestone Americas Tire Operations, LLC*, N.D.Ohio No. 5:13-CV-2793, 2017 WL 5554769 (Nov. 17, 2017).

<u>*Federal Appeal*</u>

**{¶11}** Appellants thereafter appealed to the United States Court of Appeals, Sixth Circuit. On February 13, 2019, the Sixth Circuit Court affirmed the grant of summary judgment in favor of Bridgestone by the United States District Court for the Northern District of Ohio. *See B&S Trans., Inc. v. Bridgestone Americas Tire Operations, LLC*, 758 Fed.Appx. 503 (6th Cir.2019).

<u>*Appellee's Common Pleas Lawsuit and Appellants' Counterclaims*</u>

**{¶12}** After the federal court declined jurisdiction over the state-law claims, appellee filed an action on March 23, 2016 in the Stark County Court of Common Pleas,

seeking to recover more than $1,000,000.00 that Appellants B&S and Harris allegedly owed for tires they had purchased on credit. Appellants, on April 22, 2016, counterclaimed for breach of contract, breach of the implied covenant of good faith, promissory estoppel, tortious interference with contract, antitrust, and a violation of R.C. 1353.06.

{¶13} On February 7, 2017, after the completion of discovery, appellee moved for summary judgment in regard to all claims, including the counterclaims. Via a judgment entry issued on March 28, 2017, the trial court denied summary judgment on appellee's claims, finding a factual dispute over amounts allegedly owed by appellants. However, the court granted summary judgment in favor of appellee on appellants' counterclaims. The trial court issued a *nunc pro tunc* judgment entry on April 14, 2017, adding Civ.R. 54(B) language.

### *First State Appeal*

{¶14} Appellants then filed an appeal to this Court, arguing that the trial court had erred in granting Bridgestone summary judgment on appellants' breach of contract, breach of good faith and fair dealing, and promissory estoppel counterclaims.

{¶15} Upon review, this Court affirmed the April 14, 2017 decision of the Stark County Court of Common Pleas. *See Bridgestone Americas Tire Operations, LLC v. Harris*, 5th Dist. Stark No. 2017 CA 00068, 2018-Ohio-63, 104 N.E.3d 81 (decided January 9, 2018). We will herein refer to this decision of affirmance as "*Harris I.*"

{¶16} The Ohio Supreme Court subsequently declined to accept the case for further appeal. *See Bridgestone Ams. Tire Operations, L.L.C. v. Harris*, 152 Ohio St.3d 1481, 2018-Ohio-1990, 98 N.E.3d 295 (announced May 23, 2108).

*Subsequent Common Pleas Proceedings*

{¶17} On November 21, 2018, Appellee Bridgestone moved for summary judgment in the trial court on three issues, claiming entitlement to judgment in the sum of $946,635.56 under both breach of contract and account theories, entitlement to enforce such judgment against Appellant Harris under a personal guaranty, and for interest and attorney fees. Appellants defended against the summary judgment motion.

{¶18} On January 10, 2019, the trial court filed its grant of summary judgment, which was slightly modified as to amount only by *nunc pro tunc* entry of January 28, 2019. In essence, the trial court found that both appellants were liable to Bridgestone for the sum of $946,635.56, and that both appellants were liable to Bridgestone for interest and attorney fees in an amount to be determined.

{¶19} On May 29, 2019, the trial court further awarded Bridgestone attorney fees in the sum of $262,749.80 plus expenses of $10,404.92, and interest through the date of judgment in the sum of $483,691.87, computed at the California statutory rate of ten percent on the underlying judgment.

{¶20} Appellants Ronnie Harris and B&S Transport, Inc. filed a notice of appeal on June 26, 2019. They herein raise the following five Assignments of Error:

{¶21} "I.   THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND ACCOUNT CLAIMS, IN THE SUM OF $946,635.56.

{¶22} "II. THE TRIAL COURT ERRED BY NOT ADDRESSING THE DEFENSE OF UNCLEAN HANDS THAT WAS RAISED BY APPELLANTS IN THEIR REPLY TO

[THE] COUNTERCLAIM AND IN THEIR RESPONSE TO THE SUMMARY JUDGMENT MOTION.

**{¶23}** "III. THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT ON ITS CLAIM THAT APPELLANT HARRIS WAS PERSONALLY LIABLE FOR THE $946,635.56 JUDGMENT AGAINST APPELLANT B&S TRANSPORT.

**{¶24}** "IV. THE TRIAL COURT ERRED BY GRANTING BRIDGESTONE SUMMARY JUDGMENT, [AND] IT ALSO ERRED BY GRANTING BRIDGESTONE ATTORNEY FEES.

**{¶25}** "V. THE TRIAL COURT ERRED BY APPLYING AN INCORRECT RATE OF INTEREST TO THE UNDERLYING JUDGMENT."

### *Summary Judgment Standard*

**{¶26}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion

for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

**{¶27}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

I.

**{¶28}** In their First Assignment of Error, appellants contend the trial court erred in granting summary judgment in favor of Appellee Bridgestone in the amount of $946,635.56 on its breach of contract and account claims. We disagree.

**{¶29}** California recognizes that "the vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Div. of Labor Law Enforcement v. Transpacific Trans. Co.*, 69 Cal.App.3d 268, 275, 137 Cal.Rptr. 855, 859 (1977). As in Ohio, California courts avoid interpretations of contracts that create absurd or unreasonable results. *See Sequeira v. Lincoln Natl. Life Ins. Co.*, 239 Cal.App.4th 1438, 1445, 192 Cal.Rptr.3d 127,

132 (2015). Furthermore, under California law, the essential elements of an "account stated" are: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due. *Leighton v. Forster*, 8 Cal.App.5th 467, 491, 213 Cal.Rptr.3d 899, 918 (Cal.App.2017) (additional citations omitted).

**{¶30}** However, in the case *sub judice*, it appears appellants' challenge herein is focused on the amount of the monetary judgment, rather than the question of breach *per se*. Indeed, at this juncture there is little dispute that appellants obtained certain tires on credit from Appellee Bridgestone and sold them to customers, but did not forward the monies to appellee. *See* Ronnie Harris deposition, April 29, 2015, at 179-181.

**{¶31}** Appellee largely based its summary judgment claim as to the amount owed on the November 20, 2018 third affidavit of Karen Smith, the executive director of credit and billing services for Bridgestone. In her affidavit, Smith provided *inter alia* the following explanation of the Bridgestone dealer discount program:

> Once Bridgestone tires are delivered to a dealer's customer, the dealer can submit to Bridgestone a receipt to confirm the delivery. Submitting delivery receipts can entitle the dealer to certain discounts or commissions that reduce the amount the dealer owes Bridgestone on the transactions at issue. The discounts or commissions available to dealers change from time to time and are published in Bridgestone's marketing and government policy documents made available to Bridgestone-authorized dealers, including B&S Transport. The amount of discount or commission

depends on various factors specific to the transaction, such as the type of tires delivered, the quantity of the tires, and the type of customer receiving the tires.

**{¶32}** Smith Affidavit at para. 11.

**{¶33}** We note the standard dealership agreement the parties entered into in 1991 *inter alia* provided that "[appellants] shall be entitled to purchase the Products at prices in the applicable Bridgestone price lists, *less any applicable discounts and allowances* and subject to such further terms and conditions as may be in effect from time to time." *See* Agreement, para. 6(a), emphasis added. Appellants in essence presently insist that appellee only provided evidence of what it invoiced to B&S, not what it was legally owed under the parties' agreements. *See* Appellants' Brief at 10. In other words, appellants presently contend that appellee failed to articulate to the trial court its basis for ignoring applicable discounts normally available to Bridgestone dealers, which discounts would have significantly diminished the monetary amount awarded in the underlying dispute.

**{¶34}** Attached to Smith's third affidavit as exhibit "A" is a detailed statement of account that reflects tires purchased by Appellant B&S when it was an authorized dealer. Said statement lists 81 line-item entries, consisting of 71 debits and 10 credits, resulting in an asserted net unpaid balance by B&S of $955,144.16. Smith further averred: "With respect to the transactions shown on Exhibit A, B&S has not submitted to Bridgestone any delivery receipts needed for Bridgestone to calculate the amount of any discounts or commissions to which B&S might have been entitled had it submitted the receipts. ***." Smith Affidavit at para. 12.

**{¶35}** In addition, attached as Exhibit B to Smith's affidavit are the invoices, credit memoranda, and notices that support the entries on the statement of account. Exhibit B invoices show the purchase order and amount due for each corresponding debit on the statement. Each invoice also describes the tire model, size, type, and quantities for each order and shipment. A per unit (*i.e.*, per-tire) amount is also shown on each invoice based on published price lists and special pricing offered to dealers. Finally, the credits listed on Exhibit A are supported by the credit memoranda in Exhibit B. The credits reflect commissions or discounts that B&S earned for certain tire sales.

**{¶36}** Following appellee's filing on October 23, 2018 of a motion to compel discovery, appellants produced 238 pages of documents, which were reviewed by Smith and ultimately attached as Exhibit C to Smith's affidavit. Most of the documents were either Bridgestone's own invoices to B&S or B&S's invoices to its customers. B&S didn't previously submit these documents to Bridgestone to obtain a discount. Further, the documents didn't include the delivery receipts that might entitle B&S to credits or discounts granted to authorized dealers.

**{¶37}** Nonetheless, some of the documents, although not actual delivery receipt copies, contained enough information for appellee to accept that B&S was entitled to an $8,508.60 credit against the aforesaid $955,144.16 balance. This credit thus reduced the principal amount that B&S owed to $946,635.56.

**{¶38}** In summary, Smith's affidavit explained that B&S wasn't entitled to discounts, with the exception of $8,508.60, because the documents provided in discovery (1) were not actually B&S invoices to customers, or (2) were invoices from 2012 or early 2013 for which discounts or credits had already been applied, or (3) were invoices that

no longer qualified for credits or discounts because they had not been submitted to Bridgestone within 30 days of delivery, or (4) were invoices set up for customer deliveries that post-dated the termination date of B&S as a Bridgestone dealer (*i.e.* January 1, 2014).

**{¶39}** Based in part on this evidence, the trial court granted summary judgment in favor of appellee.

**{¶40}** Generally, the measure of damages under California law for a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused [by the breach], or which, in the ordinary course of things, would be likely to result" from the breach. Cal. Civ. Code § 3300. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. *See, also, Aphection, Inc. v. Blvd Supply, LLC*, 2018 WL 1281725 (Mar. 13, 2018).

**{¶41}** Upon review, we find reasonable minds could only conclude that appellants were not entitled to additional discounts or credits against the $946,635.56 figure presented by Appellee Bridgestone pursuant to Civ.R. 56(E).[1] The trial court correctly

---

[1]   In their reply brief, appellants advance several challenges to Smith's Affidavit #3. In particular, appellants maintain that the criteria for dealer discounts and commissions was not explained by Karen Smith, preventing B&S Transport from being able to fully provide the trial court with a damages number. Appellants also maintain that Smith's basis for alleged picking only three of the invoices for possible discounts is not explained in Affidavit #3. Appellants appear to question why Smith made specific reference to invoices "000002," "000003," and "000005" as being entitled to discounts, even though, according to appellants, "[t]here appears to be little material difference between those three and the other fifty-seven invoices that the witness ignored for discount purposes." Appellants' Reply Brief at 6. However, we do not agree with appellants that Smith was basing her crediting calculations solely on those three invoices. She instead was using those three as exemplars of documents that indeed "reflect[ed] tires that Bridgestone shipped to B&S's customers in 2013 while B&S was still an authorized dealer." Affidavit at para. 16.

held that appellee was entitled to recover said sum. Accordingly, we hold the court did not err in granting summary judgment in favor of appellee.

**{¶42}** Appellants' First Assignment of Error is therefore overruled.

II.

**{¶43}** In their Second Assignment of Error, appellants contend the trial court erred by not addressing their defense of "unclean hands." We disagree.

**{¶44}** As an initial matter, we consider the question of choice of law for this assigned error.

**{¶45}** We note the full text of the "Applicable State Law" portion of the 1991 dealership agreement in this case reads as follows: "All questions of construction, interpretation, performance or breach in relation to this Agreement or any part thereof shall be determined in accordance with the laws of the State of California." Dealership Agreement at para. 13.

**{¶46}** However, the doctrine of "clean hands" is an equitable doctrine. *Ellis v. Patonai*, 9th Dist. Wayne No. 06CA0012, 2006-Ohio-5054, ¶ 21. Accordingly, since this proposed claim by appellants would not center on a legal analysis of the parties' dealership agreement, we first find reliance on California law to be unnecessary for the present assigned error. *Cf. Harris I* at ¶ 39 (declining to apply California contract law to a question of the equitable claim of promissory estoppel).

---

Smith then references the allowance of the aforementioned $8,508.60 credit for "those tires" based on the "difference between the government price and the Bridgestone price ***." *Id.* Our review thus leads us to the conclusion that the $8,508.60 credit represented a particular government adjustment, as opposed to a standard dealer discount. We find this was adequately explained by Smith in her affidavit for purposes of summary judgment, and it was not rebutted by appellants.

**{¶47}** In Ohio, the doctrine of clean hands is based on the maxim of equity that provides "he who comes into equity must come with clean hands." *Seminatore v. Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A.,* 8th Dist. Cuyahoga No. 81568, 2003–Ohio–3945, ¶ 26, citing *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45, 610 N.E.2d 450 (9th Dist.1991). This doctrine requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy. *Reid v. Wallaby's Inc.*, 2nd Dist. Greene No. 2011-CA-36, 2012-Ohio-1437, ¶ 31, citing *Marinaro*, *supra* (internal quotations and additional citations omitted). The application of the doctrine is at the discretion of the trial court. *See Slyh v. Slyh* (1955), 72 Ohio Law Abs. 537, 135 N.E.2d 675.

**{¶48}** "Equity is based upon what is perceived as fair under the circumstances of each case and, when both parties are guilty of injustice, a court of equity will leave them as they are." *Aultcare Corp. v. Roach,* Stark App.No. 2008CA00287, 2009–Ohio–6186, ¶ 44, quoting *Patterson v. Blanton* (1996), 109 Ohio App.3d 349, 354, 672 N.E.2d 208. Equity follows the law, and cannot be invoked to destroy or supplant a legal right. *Civ. Serv. Personnel Ass'n, Inc. v. City of Akron*, 48 Ohio St.2d 25, 27, 356 N.E.2d 300, 302 (1976), citing *In re Dickey* (1949), 87 Ohio App. 255, 264, 94 N.E.2d 223, 228.

**{¶49}** The gist of appellants' "unclean hands" argument at this juncture is that appellee "shut out" B&S from Bridgestone's on-line dealer payment system, blocking B&S from being able to obtain the dealer discounts that would have lessened the amounts owed back to appellee. Appellee responds that appellants ignored repeated requests to produce alternate documentation to support the dealer discounts, such as paper records

or correspondence, notwithstanding appellee's allowance of ten months for B&S to finalize matters after the notification of termination of the dealership agreement, even though only thirty days was required. Appellee also reminds us in its response that we previously concluded, in regard to termination of the agreement, "reasonable jurors would only find appellee acted within the bounds of the agreement and that no demonstrable lack of good faith had occurred." *Harris I* at ¶ 35.

**{¶50}** However, where a plaintiff's action is contractual in nature, the clean hands doctrine does not apply, even if the defendant pleads unclean hands as an affirmative defense. *See Reid*, *supra*, at ¶ 32. *See, also, O'Brien v. Ohio State Univ.*, 139 Ohio Misc.2d 36, 2006-Ohio-4346, 859 N.E.2d 607 (Ct.of Cl.)f.n.3 (a holding by the Court of Claims that where a plaintiff brought suit for monetary damages under a breach of contract theory, the court's equitable jurisdiction was not invoked and the defendant's reliance upon the equitable defense of unclean hands was misplaced.) Even if we were to conclude otherwise, in order for the doctrine to apply, "the offending conduct must constitute reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness." *GMAC Mtge., L.L.C., v. Jackson*, 3rd Dist. Marion No. 9-13-01, 2013-Ohio-2150, ¶ 26 (internal quotations and additional citations omitted).

**{¶51}** Under the circumstances of the case *sub judice*, we hold the trial court did not abuse its discretion in declining to apply the clean hands doctrine.

**{¶52}** Appellants' Second Assignment of Error is overruled.

III.

**{¶53}** In their Third Assignment of Error, appellants maintain the trial court erred by granting appellee summary judgment on its claim that Appellant Harris was personally liable for the $946,635.56 judgment against Appellant B&S Transport. We disagree.

**{¶54}** In addition to the 1991 dealer agreement and letter agreement in this matter, Appellant Harris signed a personal guaranty in 1994. He therein "absolutely and unconditionally guarantee[d]," among other things, "the payment when due of all presently existing and future indebtedness and other obligations for the payment of money (regardless of form) of Customer [B&S Transport] to Creditor ***. Guaranty at page 1. The guaranty also provides: "This Guaranty shall be binding upon, and shall inure to the benefit of, the parties' successors and assigns; provided, however, that Guarantor may not assign or delegate its duties under this Guaranty without Creditor's prior written consent." *Id.* at paragraph M.

**{¶55}** Appellant Harris first points out that he had agreed, under the specific language of the document, that the guaranty would initially inure to the benefit of "Bridgestone/ Firestone, Inc., an Ohio Corporation." *See* Guaranty at page 1. However, appellee commenced the underlying lawsuit under the name "Bridgestone Americas Tire Operations, LLC" (abbreviated hereinafter as "BATO").

**{¶56}** The aforementioned guaranty, by its terms, was to be construed and enforced under the laws of the State of Tennessee. *Id.* at paragraph L. Generally, under Tennessee law, contractual rights can be assigned. *See Dick Broadcasting Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671–72 (Tenn.2013); Restatement (Second) of Contracts § 317(2) (1981).

**{¶57}** The record before us reveals that Karen Smith, who has been employed by appellee for more than 25 years, stated in her first affidavit (filed February 7, 2017) that Bridgestone/Firestone, Inc. was the predecessor in interest to Bridgestone Americas Tire Operations, LLC. Landers Gaines, manager of government and military sales, also stated in his first affidavit (filed February 7, 2017) that B&S was a BATO-authorized dealer until its termination. The trial court specifically observed that BATO had presented competent summary judgment evidence that it was the successor to Bridgestone/Firestone, Inc., and that appellants had not contested such evidence. Judgment Entry, Jan. 28, 2019, at 8.

**{¶58}** Upon review, we find reasonable minds could only conclude that Bridgestone/Firestone was the predecessor entity to BATO, and that Appellant Harris agreed in advance to any successor assignments of the guaranty.

**{¶59}** Appellants secondly direct us to the following language in the guaranty, arguing that it creates an ambiguity and should be resolved against the drafter (appellee), emphasizing that the space following it was left blank:

**{¶60}** "E. Guarantor has given no guarantees, except as shown below, and will give notice in writing of each Guaranty issued after the date hereof.

| "Creditor | Date | Amount" |
| --- | --- | --- |

**{¶61}** *See* Guaranty at paragraph E.

**{¶62}** Under Tennessee Law, courts do not favor hypertechnical interpretation of contracts. *Ensureus, LLC v. Oliver*, 2015 WL 5157512 (Tenn. App. 2015), citing *Big Fork Min. Co. v. Kentucky Cent. Ins. Co.*, 888 S.W.2d 434, 437 (Tenn.App.1994). The above

language requiring Appellant Harris to "give notice" of each guaranty issued subsequently can only be reasonably interpreted as referring to future obligations, and the obvious intent of paragraph E is to give appellee notice of any *other* existing guarantees at the time of signing. We thus find no ambiguity in the entirety of the guaranty as a matter of law.

**{¶63}** We therefore hold the trial court did not err in granting summary judgment in favor of Appellee Bridgestone on the issue of the personal guaranty of Appellant Harris.

**{¶64}** Appellants' Third Assignment of Error is overruled.

IV.

**{¶65}** In their Fourth Assignment of Error, appellants argue the trial court erred in awarding Appellee Bridgestone attorney fees. We disagree.

**{¶66}** Appellants at this juncture reiterate their contention that summary judgment in favor of appellee was erroneous in this matter, and thus succinctly urge that attorney fees were correspondingly awarded in error.

**{¶67}** Based on our previous conclusions herein, appellants' Fourth Assignment of Error is overruled.

V.

**{¶68}** In their Fifth Assignment of Error, appellants contend the trial court erred in utilizing the California statutory interest rate in regard to the judgment awarded to appellee. We disagree.

**{¶69}** We reiterate that the dealership agreement in this matter, by its terms, was to be construed under the laws of the State of California. We note Cal.Civ.Code 3289(b) states as follows: "If a contract entered into after January 1, 1986, does not stipulate a

legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

**{¶70}** Appellants concede that as a general rule, the choice of law of the parties to a contract should govern, subject to recognized exceptions. In other words, "*** the parties' choice of law to govern their contract will be enforced, except where the chosen state has no substantial relationship to the parties or the transaction or when the application of its law would offend a fundamental policy of a state with a materially greater interest." *Greif Packaging, L.L.C. v. Ryder Integrated Logistics, Inc.*, 6th Dist. Lucas No. L-09-1259, 2010-Ohio-4384, ¶ 25, citing *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 453 N.E.2d 683.

**{¶71}** Appellants essentially present a three-fold challenge to the application of the California interest rate. They first claim the tire-dealership arrangement between B&S and Bridgestone had nothing to do with California. They further argue that under Ohio law (R.C. 1343.03), interest on a judgment is tied to the federal short-term interest rate as outlined in R.C. 5703.47, suggesting a fundamental policy variance between Ohio and California. Finally, appellants urge that the choice of law provision in the dealership agreement references construction, interpretation, performance, and breach, but not "remedies," thus permitting Ohio law to be considered.

**{¶72}** However, a review of *Harris I* reveals that this Court therein steadfastly analyzed and applied the pertinent laws of California, making an exception only because of an issue pertaining to the equitable claim of promissory estoppel. The law of the case doctrine provides that a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both

the trial and reviewing levels. *U.S. Bank v. Detweiler,* 5th Dist. Stark No. 2011 CA00095, 2012–Ohio–73, ¶ 26. Appellants cannot be permitted to avoid the invocation of California law when it suits their purposes for a particular issue. Furthermore, as to appellants' third sub-argument *supra*, we are not inclined to otherwise remove the interest rate aspect of this dispute from the canopy of California law, as we find the issue of interest upon breach falls under the choice of the law provision to which the parties originally agreed.

**{¶73}** We therefore hold the trial court did not err in applying the ten percent California statutory interest rate on the judgment.

**{¶74}** Appellants' Fifth Assignment of Error is therefore overruled.

**{¶75}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, J., and

Delaney, J., concur.

JWW/d 1216